JUDGE COFER
delivered the opinion oe the court.
The appellants are the devisees of Mrs. Priscilla H. Talbott, and prosecute this appeal from a judgment rendered in her life.time dismissing a suit brought by her to set aside a deed made by her and her husband, ¥m. S. Talbott, to the appellee, conveying to him a tract of two hundred and ninety-one acres of land, in consideration, as the deed recites, that the appellee would take Mrs. Talbott and her husband into his family as members thereof, and furnish them board and lodging for and during their natural lives, and had executed his note to Mrs. Talbott for $2,000, payable one day after date, interest upon which at six per cent was to be paid annually during the lifetime of her husband, and at his death to be surrendered and canceled.
Three grounds were relied upon for setting aside the deed, viz.:
1. Fraud and undue influence in procuring it.
2. Mistake on the part of Mrs. Talbott as to the nature and effect of the instrument.
*411 3. "Want of proper acknowledgment and certificate.
1. As respects the first ground a large amount of evidence was taken. Mrs. Talbott had been twice married, but never had any children. Her first husband devised to her his whole estate, and at the time she married her second husband she owned the farm now in contest, and had choses in action, stocks, etc., worth from $10,000 to $15,000. After her marriage with Talbott the appellee married a daughter of Talbott by a former marriage. The deed in question was executed on the 9th day of January, 1873, at which time Mrs. Talbott was about seventy-five and her husband about seventy-six years of age. They resided on the farm without any other white person in the family, were both feeble from age, and Mr. Talbott was peculiarly helpless on account of extreme obesity.
The evidence conduced to prove that in the fall of 1872 Mrs. Talbott proposed to the appellee that if he would come to her house and live, and take care of her and her husband, she would give him the farm and the personal property on it, except a horse and rockaway and some other articles not of great value; that she asked the advice of one of her neighbors on the subject, who advised her that it would be a very good arrangement, but he did not think she would be satisfied with it. She also said she had appealed to her husband for advice, and her husband, who was then present, said if she was negotiating on the subject with any person besides his son-in-law he would advise her, but on account of that fact he thought it better not to do so. There is some evidence of interviews between her and the appellee between that time and the latter part of December, when she sent him word to come to her house, that she wished to see him. On the 7th of January he was at her house, and an agreement was reached by which, as the appellee claims, he was to have the land for the consideration mentioned in the deed; but she claimed he was to have the use of the farm as long as either she or her husband should *412 live, in consideration that he would move into her house with his family and board and lodge her and her husband for life, and pay them annually the sum of $120, and pay her $2,000 at the death of her husband.
On the 8th of January the appellee returned with a deed which seems to have been in all respects like that finally executed, except it recited that the annual payment of $120 was to be made to her husband. The deed was then read to her in the presence of her husband and the appellee by the county court clerk, but her husband objected to having the annual payment made payable to him, and for the purpose of making an alteration in that respect the appellee went to Hopkinsville and on the following day returned with the deed and note corrected. On that occasion he was accompanied by a deputy clerk, a young man about eighteen years of age, who, as both he and the appellee testified, read the deed to Mrs. Talbott, after which she and her husband signed and acknowledged it. Mrs. Talbott, however, testified that it was not fully read to her; that the young man read indifferently; and having the utmost confidence in the appellee, she told the deputy clerk that he need not read further, and signed it under the impression that it was a contract for the use of the farm until the death of her and her husband, and not an absolute conveyance.
The evidence shows that the land and other property conveyed was worth $8,000 or $9,000; and estimating the probable duration of the lives of Mrs. Talbott and her husband by the life-tables, and the value of board and lodging according to the opinions of witnesses testifying in the cause, we have reached the conclusion that the price agreed to be paid did not much, if at all, exceed one half the value of the property conveyed.
But the inadequacy of price is the sole fact established in the record calculated in any way to .bring in question the perfect fairness of the transaction, and the force of that fact is *413 very much weakened by the fact that Mrs. Talbott and her husband were old and feeble, unable to wait upon themselves, and she, especially, was of a most unfortunate temperament, which rendered the task of taking care of her during life extremely undesirable.
Such inadequacy of price will arouse the suspicions of the chancellor and induce him to a vigilant scrutiny of the facts and circumstances attending the transaction, but if he finds no other evidence impeaching its bona fides he must leave the parties where he finds them.
2. We can not conclude that there was any mistake on the part of Mrs. Talbott as to the nature and effect of the instrament.
As already stated, she had, months before the deed was executed, proposed to give the land to the appellee to board her and her husband for life. In that proposition, as detailed by the witness to whom she repeated it, she asked nothing more, whereas by the agreement contained in the deed she got in addition $120 per year during the life of her husband.
The deed was twice read to her; she is proved to have been in the full enjoyment of her senses and her faculties of mind, and to have been a woman of education, of experience in business, and of more than ordinai’y intelligence.
There were no complications in the deed, and no difficulty in understanding it, and the only conclusion at all consistent with the evidence is that she did understand it fully at the time, and executed it after mature reflection.
3. The certificate of the acknowledgment of the deed by Mrs. Talbott is in the usual form, and purports to have been signed in person by B. M. Harrison, clerk of the Christian County Court. It is, however, alleged in the petition, and admitted in the answer, that it was in fact acknowledged before R. E. Harrison, and not before B. M. Harrison; but both the pleadings and the uncontradicted evidence show that the *414 certificate was written out on the deed and the name of B. M. Harrison signed to it by R. E. Harrison, who is shown to have been regularly appointed and qualified as a deputy, and to have acted as such in taking the acknowledgment, and in writing and signing his principal’s name to the certificate.
Counsel contend that the certificate is not the act of B. M. Harrison, the clerk, because he neither took the acknowledgment nor made the certificate, and that it is not the act of R. E. Harrison, the deputy, because he did not sign it, and for the further reason that it does not purport to have been made by him.
The deputy “ is but the officer’s shadow, and doth all things in the name of the officer himself, and nothing in his own name, and his grantor (principal) shall answer for him” (3 Kent, 458); and in Triplett, &c. v. Gill, &c. (7 J. J. Mar. 438), and Commonwealth v. Arnold (3 Litt 316) this court held that a deputy had a right to sign his principal’s name, and in the latter case that a deputy appointed merely by parol had such authority.
Whatever official act is done by a deputy should be done in the name of his principal, and not in the name of the deputy. The authority given by law to a ministerial officer is given to the incumbent of the office. Authority is not given to the deputy, but to the principal, and is exercised by the principal, either by himself or his deputy, so that whether the deed was acknowledged before B. M. Harrison in proper person or before R. E. Harrison it was, in contemplation of law, acknowledged before the former in his official capacity; and it was not only lawful, but entirely proper that the body of the certificate should read precisely as if the clerk in proper person had taken and certified the acknowledgment, the only irregularity being that the deputy omitted, after signing his principal’s name, to add “ By R. E. Harrison, D. C.”
The certificate being regular and valid on its face, Mrs. Talbott sought to avoid it by proving that it was not in fact signed *415 by the principal clerk, and in doing so she proved that it was written and the clerk’s name signed by R. E. Harrison, and he being a deputy authorized by law to sign his principal’s name, the evidence offered to show the certificate illegal, because B. M. Harrison did not affix his signature to it, shows it to be valid, because his name was signed by an authorized deputy.
But it appears that R. E. Harrison, although regularly qualified as a deputy, was a minor at the time he took the acknowledgment, and it is insisted that his acts were invalid for that reason.
There is no statute in this state prescribing the qualifications of a deputy clerk. It has been the immemorial custom of clerks to appoint minors deputies, and, as far as we are advised, the legality of such appointments has never before been called in question, and we must regard such long-continued acquiescence on the part of the legislature, the bench, and the bar as the very highest possible evidence of its legality.
It is not claimed that R. E. Harrison had not arrived at years of discretion, or that for want of knowledge or general intelligence he was an unfit person to be intrusted with the duty of taking the acknowledgment of deeds, but the objection is rested upon the sole ground that he was at the time under the age of twenty-one years, and all we mean to decide is that his acts were not on that account alone invalid.
In the certificate as indorsed on the deed it appears that the deed was acknowledged in the clerk’s office, when the fact was it was acknowledged at the residence of the grantors, and when the deputy came to compare the record of the deed and certificate with the originals he changed the record so as to make it conform to the fact, but failed to make a corresponding change in the original certificate. This did not affect the validity of the certificate. It was immaterial whether the deed was acknowledged in the office or elsewhere in the county, and *416 it was therefore of no importance, so far as the efficacy of the record of the deed and certificate was involved, whether the certificate was true in that respect or not.
It is also insisted that the evidence shows that the deed was not read and explained to Mrs. Talbott, and that her husband was present when she acknowledged it. She testified to both these facts, but was expressly contradicted by R. E. Harrison and the appellee.
If, therefore, the validity of the certificate depended upon a preponderance of the parol evidence alone, it would be sustained. But even a preponderance of evidence against the certificate would not be sufficient to overturn it. (Hughes & Co., &c. v. Coleman, &c., 10 Bush, 246.)
We perceive no error to the prejudice of the appellants, and the judgment is affirmed.