## Wood v. Corcoran, Administrator, Etc.

(Decided November 15, 1921.)

### Appeal from Kenton Circuit Court.

1.   Wills—Execution.—A will which is consistent in its provisions and rational on its face will be presumed to have been executed by a sane person, unless evidence is adduced to the contrary.

2. Wills—Mental Capacity—Non-Expert Witnesses.—A non-expert witness may express an opinion concerning the sanity or insanity of a testatrix if said witness state the facts upon which he bases his opinion.

3. Wills—Non-Expert Witnesses.—The fact that a non-expert witness has not been intimately associated with the testatrix for a number of years, but has only seen and talked with her at intervals, does not go to the exclusion of the testimony of such witness if otherwise competent and relevant, but only to its probative value, of which the jury is the sole judge.

4. Wills—Mental Capacity—Instructions.—It is proper for the trial court to instruct the jury in a will case where the mental capacity of the testatrix is questioned, that the testatrix was of sound mind at the time of the making of the will if at said time she had sufficient mental capacity to know the natural objects of her bounty, her obligations to them, the character and value of her estate, and mental power sufficient to make a rational survey thereof and dispose of her property according to a fixed purpose of her own.

MYERS & HOWARD and R. C. SIMMONS for appellant.

GALVIN & GALVIN, WM. A. BYRNE and JOHN T. MURPHY for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

This is an appeal from a judgment finding certain papers to be the last will and codicil of Mary J. Reynolds, who in her eighty-fifth year, died a resident of Kenton county, Kentucky, in 1918. The will was executed in 1911, the codicil in 1914. On a former trial the court peremptorily instructed the jury to find the papers offered in evidence to be the will and codicil of the testatrix, there being, as the court believed, no sufficient evidence showing mental incapacity on the part of the testatrix to warrant a submission of the case to a jury on that question. In the opinion, which will be found in 190 Ky., page 521, the facts are reviewed at length and it will not be necessary to again do so except to the extent of determining whether the witnesses for the propounders had opportunity to observe the testatrix or to know sufficient facts concerning her life and mental condition to be able to form an intelligent and reasonable judgment of her mental capacity. The testatrix, Mrs. Reynolds, was a widow, her husband having died several years previous to the date of her will. The whole estate was composed of property worth about $7,500.00; she had no children and no relatives nearer

than appellant, Isabella Wood, a second cousin, and Mrs.
McGrail, a daughter of Mrs. Wood. Although testatrix
lived with Mrs. Wood and Mrs. McGrail for many months
before her death and was the recipient of many kind-
nesses and a great deal of patient attention, she did not
give any considerable portion of her estate to either of
them, but devised to Mrs. Wood one dollar and to Mrs.
McGrail five hundred dollars and the right to occupy and
use, rent free, a certain apartment for the period of three
years after the death of the testatrix; the residue of her
estate she devised to a library society of her church, with
which society the testatrix had not been identified during
her life.

On the second trial the court obeyed the mandate of
this court and submitted the case to the jury. Of this
there is no complaint, but it is now insisted by appellant
that the trial court erred in allowing, over objection of the
appellant, non-expert witnesses to express an opinion as
to the mental status of the testatrix at or about the time
of the making of the will and the codicil in contest. The
second insistence is that the court improperly instructed
the jury with respect to the presumption that prevails in
favor of the sanity of a testatrix when a will is shown to
be consistent in its provisions and rational on its face,
and as to what constitutes soundness of mind sufficient
to enable one to make a will disposing of property. It is
said in brief of counsel for appellant that the trial court
admitted opinion evidence by numerous non-expert wit-
nesses who by their testimony show that they had little or
no familiarity or acquaintance with the testatrix and
practically no opportunity to observe her mental condi-
tion. The witnesses so allowed to testify are named in
the brief as follows: Mrs. Bridgett O'Connell, Mrs.
Mary Corcoran, Mr. Bernard Doyle, Mrs. Margaret Wil-
son and Mr. J. D. Perck.

We have carefully read the evidence of these several
witnesses to determine whether the objection is well taken
and are unable to agree with counsel that the named wit-
nesses do not state facts sufficient to have justified the
trial court in allowing them to express an opinion as to the
mental soundness of the testatrix at or about the time of
the making of the testamentary papers in contest. To
make this plain it will only be necessary to refer to the
evidence in a very general way, taking Mrs. Bridgett
O'Donnell first:

The witness was 78 years old at the time she gave her evidence and had known the testatrix about 60 years, and had in their younger days been together very much, but in after years their meetings were less frequent, but the witness visited the testatrix in her sickness. They were always friends. She saw the testatrix the night before her death and had seen her on other visits during her sickness, the testatrix having no difficulty in making herself understood and could understand the witness; she did not notice any defect in speech of the testatrix. She said that "testatrix was like myself, she knew herself, and she was a business woman, businesslike," and she expressed the opinion that the testatrix had sufficient mind and memory to know her relatives, the objects of her bounty, to know her estate and its value and the obligations she owed to other persons and that she was able to dispose of her estate according to a fixed purpose of her own.

On the facts to which the witness testified we have no doubt that the court properly allowed Mrs. O'Donnell to express her opinion as to the mental condition of the testatrix.

A review of the evidence given by Mary Corcoran shows the following facts:

The witness was 80 years of age at the time she testified, and lived on Greenup street in Covington, not very far from the testatrix, and she had known her for fifty years or sixty years. The testatrix visited the witness and frequently met her on the street or in the grocery. But the witness did not talk a great deal with testatrix, though the sister of the witness was an intimate friend of the testatrix, and witness often accompanied her sister on visits to the testatrix. The last time witness saw testatrix was about six or eight months before testatrix was stricken. She did not notice the testatrix had any peculiarities; her conversation was intelligent and could be understood, and testatrix understood what the witness had to say. She only saw her "maybe once a month or twice a month" for some years before testatrix was stricken with paralysis; testatrix made her own clothes and was not a fancy dresser; witness never had any dealings with her except in a social way. Witness expressed the opinion that Mrs. Reynolds had mind sufficient to know her relatives, the object of her bounty, her obligations to them, to know her property and its value and extent and had sufficient mind and memory to

dispose of her property according to a fixed purpose of her own.

Mrs. Dellia Bannon testified that:

She lived in Covington and was well acquainted with the testatrix; that she had been married 38 years; that she saw the testatrix in 1911; that she saw the testatrix occasionally all her life, "ever since a child, to speak to but not in particular; I had no occasion to because I worked and was not much at home, but my mother and her were good friends." Witness further stated that she had a conversation with the testatrix on Garrent street in Covington in 1911; that she did not notice any peculiarities. The witness related the conversation in which testatrix said: "I think I know you—your name was Keefe before you married. I thought so because you look so much like your mother." And testatrix further said to witness: "Can you tell me where a family lives named Doyle?" And witness answered: "The third house on the opposite side of the street," and testatrix thanked her for it. Witness testified that from her observation and her knowledge of her through several years she believed testatrix had sufficient mind and memory to know her relatives, her obligations to them and the extent and value of her property and sufficient mind to dispose of it according to a fixed purpose of her own.

Bernard Doyle, aged 60 years, residing at Covington, testified that he had known the testatrix for 39 years and had known her husband. That for four months he was employed by the husband of the testatrix and worked for him in a saloon and saw testatrix every day; that was in 1882 or '83. For about fifteen years after that he did not see much of her. After the death of Mr. Reynolds witness saw testatrix about two or three times every year. Witness went to visit testatrix and in 1909 witness rented a flat from testatrix and lived very near her for eighteen months. After that he did not see her much until her death, but he was allowed to express his opinion concerning the mental capacity of testatrix.

Without extending this opinion unduly it will be sufficient to say that the other witnesses mentioned testified to facts very similar to the ones related by the witnesses whose testimony we have just reviewed, but in no instance were the witnesses intimately associated with the testatrix at the time or immediately before the making of the will and codicil in question. We are, however, of opinion that the witnesses stated facts sufficient to sup-

port an opinion as to the mental soundness of the testatrix. The fact that the witnesses were not in intimate association with the testatrix for some months or years before her death does not go to the exclusion of the testimony but only to its probative value, and the trial court did not err in allowing the witnesses, although non-expert, to opinionate concerning the mental soundness of testatrix after having stated the facts shown by the evidence. Had these witnesses been able to relate facts showing a more intimate knowledge of the daily life and habits of the testatrix their evidence would have been more convincing and the jury might have attached greater importance to it. Nevertheless the facts related by the witnesses were sufficient to support the opinion as to the testatrix's mental capacity. Our rule, as stated by this court in many opinions, is to allow a non-expert witness to express his opinion of the sanity of the testatrix where his opinion and conclusions are based upon facts testified to by him. This rule was first announced by this court in the case of Hunt's Heirs v. Hunt, 3 Ben Monroe 577, where we said: "It has been expressly held by the courts in Massachusetts and Pennsylvania that the opinions of witnesses, other than the subscribing witnesses, as to the competency of a testator, without stating the facts upon which they are predicated, are not evidence, and that seems to us to be the correct rule and the true doctrine. For even when facts are stated, from which the opinion is deduced, it is not so much the opinion of the witness as the facts themselves which constitute the testimony."

To the same effect are the cases of Turner v. Grace, 185 Ky. 457; Schrodt's Executor v. Schrodt, 189 Ky. 457; Wise v. Foote, 81 Ky. 10.

The facts as related by the several witnesses for the propounders bring their evidence within the rule stated in the opinions to which we have referred, and the court properly allowed the witnesses to express an opinion as to the sanity of the testatrix.

As the second contention of appellant is based almost, if not entirely, upon her first contention just considered, it will be unnecessary for us to devote much time to an examination of the question of the correctness of the two instructions of which appellant complains. The first instruction directed the jury to find the paper offered in evidence to be the last will of Mrs. Reynolds unless they believed from the evidence that at the time she executed

said paper she was not of sound mind. A similar instruction was given in respect to the codicil, and the jury was told to make a separate finding as to the will and codicil. The following two instructions to which appellant objects are numbered (2) and (3), and read:

"(2)  If you believe from the evidence that the papers purporting to be the will and codicil of said Mrs. Reynolds are consistent in their provisions and rational on their face, the presumption is that said Mrs. Reynolds was of sound mind at the time of their execution and the burden shifts to the contestants to show that she was not of sound mind at said time.

"(3)  A person executing a will or a codicil to a will is of sound mind within the meaning of the foregoing instructions if at the time of their execution she had sufficient mental capacity to know the natural objects of her bounty, her obligations to them, the character and value of her estate, and can make a rational survey thereof and dispose of it according to a fixed purpose of her own."

It is conceded that the two instructions have often been given and frequently approved or if criticised at all, never held to be reversible error by this court. Appellant, however, insists that under the peculiar facts of this case the two instructions are prejudicial. This assertion is based upon the hypothesis that the non-expert witnesses were allowed to express opinions without supporting such opinions by the statement of sufficient facts, but as this contention is untenable it must be agreed that the instructions of which complaint is made are not grounds for reversal of the judgment.

Judgment affirmed.