# Love et al. v. Gibbs et al.

(Decided May 31, 1938.)

H. C. CLAY & SONS for appellants.

J. EMORY WALDEN for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE STITES— Affirming.

This is an appeal from a judgment of the Laurel Circuit Court sustaining the will of J. R. Gibbs, deceased. The only question argued is whether or not the writing in question was executed in conformity with the Statute of Wills, Kentucky Statutes, Section 4828, providing:

"No will shall be valid unless it is in writing with the name of the testator subscribed thereto by himself, or by some other person in his presence and by his direction; and, moreover, if not wholly written by the testator, the subscription shall be made or the will acknowledged by him in the presence of at least two credible witnesses, who shall subscribe the will with their names in the presence of the testator."

It appears that Mr. Gibbs died a resident of Laurel County in 1932. In May, 1936, his widow produced the paper in question to the Laurel County Court, and it was probated as his will. Thereupon an appeal was prosecuted to the Laurel Circuit Court by several of Mr. Gibbs' children, and the judgment of the County Court was upheld. After making various bequests of his property, testator concluded his will as follows:

"In witness whereof, I have here and too subscribed my mark to name this 4 day of Feb., 1932.
"X J. R. Gibbs by E. J. Cox

"We whose names are here and to subscribed, do hereby certify that J. R. Gibbs, the testator subscribed his mark to name to this instrument in our presence and in the presence of each of us and declared at the same time in our presence and hearing that this instrument was his last will and testament, and we at his request signed our names here and too in his presence as attesting witnesses.
"X J. R. Gibbs
"By E. J. Cox
"X Mart McWhorter"

The proof indicates that Mr. Gibbs went to the home of E. J. Cox, a Justice of the Peace, at East Bernstadt, for the purpose of having his will written. Squire Cox wrote the entire will, including the attesta-

tion clause and the signature. Neither Mr. Gibbs nor Mart McWhorter could read or write, and as a consequence Squire Cox subscribed their names, and then Gibbs and McWhorter each made his mark. Both Squire Cox and Mart McWhorter were dead at the time when the will was offered for probate. It does not appear whether or not they both died before the testator. There is positive testimony, however, to sustain the fact that both McWhorter and Gibbs made their marks to the will, as stated above.

Two questions are presented for consideration: (1) Is the unwitnessed mark of McWhorter a sufficient subscription to make him an attesting witness within the meaning of the statute? and (2) Did E. J. Cox subscribe the will as an attesting witness or simply as an amanuensis for the testator? We will consider these questions in the order named.

It is argued that the unwitnessed mark of McWhorter is an insufficient subscription because of the provision contained in Subsection 7 of Section 732 of the Civil Code of Practice that:

"The words 'signature,' 'subscription' and words of like import, include a mark by, or for, a person who can not write, if his name be subscribed to an instrument and witnessed by a person who, near thereto, writes his own name as a witness."

In the case of Maupin v. Berkley, 3 Ky. Law Rep. 617, 11 Ky. Op. 487, it was contended that a signature to a note made by mark was insufficient under the Code because not witnessed, but it was held that:

"The Civil Code is intended to regulate the practice in civil cases, and it is in reference only to the execution of such instruments as is required to be executed under the provisions of the code that this construction or definition of the word 'signature' can apply."

The rule announced in Maupin v. Berkley has been followed in other cases. Meazles v. Martin, 93 Ky. 50, 18 S. W. 1028, 13 Ky. Law Rep. 958; Vanover v. Murphy's Adm'r, 15 S. W. 61, 12 Ky. Law Rep. 733. Compare Terry v. Johnson, 109 Ky. 589, 60 S. W. 300, 22 Ky. Law Rep. 1210; Upchurch v. Upchurch, 55 Ky. 102, 16 B. Mon. 102. In the absence of a statute, a witness may as effectually subscribe his name by mark as by writing

his signature in full. Staples v. Bedford Loan & Deposit Bank, 98 Ky. 451, 33 S. W. 403, 17 Ky. Law Rep. 1035.

While it was controverted in the trial in the circuit court, it is not here disputed that McWhorter himself placed his mark on the writing. We conclude, therefore, that, so far as McWhorter is concerned, his mark was a sufficient subscription under the requirements of the statute.

The second question, namely, Is E. J. Cox an attesting witness? presents some difficulty. The general rule is thus stated in Page on Wills, 2d Ed., Vol. I, p. 549, sec. 343:

> "One who signs his name to a will is said not to be a subscribing witness thereto unless he signs with intention of signing as a witness; but this undoubtedly means that the facts and circumstances which attend his signing must show that he is signing as a subscribing witness and not for some other purpose. If the surrounding facts and circumstances indicate that he is signing as a witness, his secret intention not to act as a witness does not make the will invalid. One who signs testator's name for such testator and adds his own name thereto to indicate that testator's name was signed by him, does not sign as a subscribing witness."

In Burton v. Brown, Miss., 25 So. 61, the name of the testator was subscribed "per H. M. Mingo." It was held that a mere inspection of the paper demonstrated that Mingo did not sign as a subscribing witness, but only as an amanuensis of the testator. A similar conclusion was reached in Peake v. Jenkins, 80 Va. 293. A number of cases on the subject are collected in an annotation in 8 A. L. R. at page 1075. See, also, Baxter v. Bank, 340 Mo. 952, 104 S. W. (2d) 265; In re McDonough's Estate, 201 App. Div. 203, 193 N. Y. S. 734. It is unnecessary here to reconsider the varying facts of each of those cases, but it will be sufficient to state that the conclusions expressed in Page on Wills, quoted above, are supported by the authorities.

We may narrow our investigation, therefore, simply to the question of whether or not it appears that Squire Cox may be said to have intended to affix his signature as an attesting witness. This case is not like

the Mississippi case nor the Virginia case, where the signature of the testator was written by another without more. There was nothing present in either of those cases to indicate an intention to attest the will. We have here, however, an attestation clause reciting what took place. It furnishes a potent circumstance to indicate the purpose or intent of Squire Cox in affixing his signature thereto. It is more consonant with reason, as well as with grammar, to assume that the "we" referred to in the attestation clause was intended to include Squire Cox and Mart McWhorter than to assume that Mr. Gibbs was undertaking to attest his own signature or to refer to himself in the third person. The clause recites that *"we* at *his* request sign *our names* here and too in *his* presence as *attesting witnesses."* Certainly, testator did not request himself in his own presence to attest his own will. We are forced to conclude, therefore, that Squire Cox intended, when he affixed his signature, to certify to the facts recited in the attestation clause and thus to serve as one of the two witnesses, and did not merely write his name as an amanuensis for Mr. Gibbs. It is conceivable that he had the dual intent to serve both as witness and as scrivener. This would not invalidate the execution. Abraham v. Wilkins, 17 Ark. 292; Elston v. Price, 210 Ala. 579, 98 So. 573; Griffiths v. Griffiths, [1871] L. R. 2 Prob. Div. 300; Keely v. Moore, 196 U. S. 38, 25 S. Ct. 169, 49 L. Ed. 376. Unless we are completely to ignore the recitals of the attestation clause and look at the form of the signature alone, we cannot agree with appellants' contention. Manifestly, the recitals are a circumstance to be considered in arriving at the intent of the signers. In this case, we think that they are controlling. It follows that the judgment of the trial court is correct.

Judgment affirmed.

Whole court sitting.