## Madden et al. v. Cornett.

March 27, 1942.

W. E. Faulkner for appellant.

H. H. Smith and J. C. Burnette for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER—Affirming.

Dock Madden, survived by several brothers and sisters, departed this life on the 7th day of November, 1937, a citizen and resident of Knott county.

Appellee, Martha Cornett, until about 8 years before

Madden's death was his close neighbor and throughout their lives had been his steadfast friend. For the last 8 years she made her home about 6½ miles from his residence. Over a period of several years appellee had extended loans to Madden in evidence of which he executed various promissory notes which were secured by mortgage on real estate owned by him. The indebtedness amounted to over $2,000 at the time of his death.

On December 20, 1937, appellee presented to the Knott county court, and offered for probate therein, an instrument of writing purporting to be Madden's last will and testament, whereupon an order was entered establishing the writing to be such and directing that it be filed of record. Appellants appealed from that order on the ground: (1) that the will was not executed in accordance with the provisions of Section 4828, Kentucky Statutes; (2) that Martha Cornett had exercised undue influence on the testator and because of such undue influence had procured the execution of the will; (3) that testator did not have testamentary capacity. Upon verdict of the jury, judgment was entered declaring the writing to be his last will and testament from which judgment this appeal has been prosecuted.

We are confronted first with a question of procedure. When the motion for new trial was overruled an appeal to this court was granted. The order overruling the motion and granting the appeal did not refer to the filing of a bill of exceptions as such but contained the following language:

"Upon motion of the plaintiffs, Manis Slone, the Court Reporter who took down in shorthand the evidence, rulings of the Court, objections and exceptions, is now directed to make a full and complete and accurate transcript of the testimony and objections and exceptions and rulings of the Court and a carbon copy thereof and file same among the papers in this action. The said Court Reporter is given until the last day of the next regular term to file this transcript herein."

Before the time for filing the transcript, the court extended the time for filing a bill of exceptions until the third day of the following term of court. Appellee asks that the appeal be dismissed because the order overruling the motion for a new trial did not specifically grant

appellants time beyond the then present term of court in which to file the bill. While it is true that the order did not in express terms grant time to file the bill of exceptions, nevertheless, it did direct the court reporter to prepare a record containing all of the matters which a bill of exceptions must contain and gave until the last day of the following term of court as the time in which it might be filed. Since we must look to the substance rather than to the form of the order, we are of the opinion that it substantially complies with Section 334 of Civil Code of Practice although the usual term "bill of exceptions" was not therein contained. Therefore we will proceed to consider the appeal on its merits.

The will is expressed in the following language:

"I Dock Madden

"May 15th 1935.

"Dock Madden party of first part and Martha Cornett party of second part The party of the first part Dock Madden agrees and wills to Martha Cornett party of second part all his real estate and personal property at his death after his debts and funeral expenses is paid. for taking care of him and paying Doctor Bills Trough life. for he says she has done more for him that all of his people ever done for him he says that he want her to have what he has got left at his Death. he says she has aided and assistant him through life when no one else wouldn't.

"Dock Madden

"Given under my hand this the 15th day of May 1935.

"Arthur Pigman Clerk
"By N. J. Mullins, D. C.

"Witt R. H. Fields."

Complaint is made that since the will was not wholly written by the testator it was not properly witnessed because N. J. Mullins signed the document in his official capacity, as deputy clerk, and not as a subscribing witness.

Section 4828, Kentucky Statutes, provides:
"No will shall be valid unless it is in writing with the name of the testator subscribed thereto by himself, or by some other person in his presence and by his direction; and, moreover, if not wholly written

by the testator, the subscription shall be made or the will acknowledged by him in the presence of at least two credible witnesses, who shall subscribe the will with their names in the presence of the testator.''

In construing this section of the Statutes this court has repeatedly held that a substantial rather than a literal compliance with the statute is required, and, if its object and intent are reached, without violation of its express language, nothing more is required. Robertson v. Robertson, 232 Ky. 572, 24 S. W. (2d) 282; Savage v. Bulger, 76 S. W. 361, 25 Ky. Law Rep. 763, and cases therein cited. The will was not wholly written by the testator; the subscription, however, was made by him and the will acknowledged in the presence of two witnesses whose credibility was not impeached. Both subscribed their names at the request, and in the presence of, the testator. It is true that one of the witnesses subscribed the name Arthur Pigman, Clerk, and attached his own signature in his official capacity, as deputy clerk. Nevertheless his name is signed to the instrument and it was proven that he was a witness to the signature of testator, and the manner of subscribing his name was not in violation of the express language of the statute. All that was required of this witness was to sign his name, and the fact that he attached more writing to the instrument than was necessary under the statute does not vitiate his signature. Merrill v. Boal et al., 47 R. I. 274, 132 A. 721, 45 A. L. R. 830. That being true, we are of the opinion that the provisions of the Statutes in respect to the execution of the will were fully met.

While it is true the evidence shows that from time to time, probably as a result of overindulgence in drink, the testator was subject to delusions, there is no evidence appearing in the record that at the time he executed the will he did not have sufficient mental capacity to meet the test of knowing the nature and extent of his estate, the natural objects of his bounty, his obligation to them, and to dispose of his estate according to a fixed purpose of his own. If from the evidence presented by the contestants it is reasonable to infer that he did not possess such capacity, the evidence presented by the proponents was contradictory thereto. Two physicians testified that they had known him for several years, that they were acquainted with his habits and mental condi-

tion, and, in their opinions, he had sufficient capacity to meet the test. Therefore, there was ample evidence to support the finding of the jury in that respect.

It is most earnestly insisted that testator executed the will because of undue influence on the part of Mrs. Cornett. Appellants argue that the evidence conclusively shows that the weakness of Madden's will power was proven by establishing the following facts: that shortly after the death of testator's mother he began drinking excessively, that the habit grew more pronounced as the years went by, resulting in his suffering from chronic alcoholism; he took less interest in his ordinary business affairs; spent all his money on whisky; neglected his personal appearance, became ill tempered and hard to get along with; wandered about among his friends and neighbors, telling of strange things happening at his home, one of which was the return of his deceased mother. They argue further, that having established a weak will, it follows that the testator was a fit subject for undue influence and that the record shows him to have been so influenced. Conceding, arguendo, that he was in a condition to be influenced unduly, no circumstance appearing in the evidence is sufficient to support the conclusion of appellants that such influence was actually exercised by appellee or anybody else. It is true that testator over a period of a great many years borrowed small sums of money from appellee, who was probably the only person willing to grant him such favors. It is likewise true that she was sufficiently prudent to require security for the debt. Some evidence was introduced that testator complained that she nagged at him to deed or will her his whole farm, from which evidence appellants conclude that his fear that she would dispossess him of his real estate caused him to name her as beneficiary in the will. The evidence on this point is conflicting, and, in so far as it could be said to support the contention of appellants, we deem it to be extremely uncertain. The most positive evidence directed to this question placed the time of the nagging and fear that he would be dispossessed of his property 6 or 7 months after the will had been executed. Certainly the facts adduced by that testimony could not be considered to have influenced him in respect to the execution of the will. Undue influence is such influence as obtains dominion over the mind of the decedent to such extent as to destroy his free agency in the disposal of his estate, and

constrains him to do that which he would not have done if left to the free exercise of his own judgment; and it must be shown to have been exercised at the time the will was executed. Hall v. Hall, 153 Ky. 379, 155 S. W. 755. The presence of undue influence may be shown by circumstances from which it can reasonably be inferred the influence was exerted but it is not sufficient that it be shown that there was merely an opportunity to exercise undue influence or that there was a probability that it was exercised. Some evidence must be adduced showing that it was actually exercised. Crump v. Chenault, 134 Ky. 187, 156 S. W. 1053. Influence obtained by acts of kindness or by appeals to the feelings or understanding and not destroying free agency does not amount to undue influence. Watson Ex'r v. Watson, 137 Ky. 25, 121 S. W. 626. It is argued that it was an unnatural act on testator's part to devise his estate to his friend and not to his relatives. But we are not convinced, in view of the circumstances disclosed in the record, that such an act was so unnatural as to cast any burden on appellee to disprove the charge of undue influence. Almost every act of kindness which was extended to him in the last few years of his life was extended by appellee, so far as the record shows. Although he was the owner of considerable property, it is apparent from the record that he had no cash at his disposal, and, while there was no obligation on their part to do so, it is only reasonable to infer from the record that his brothers and sisters refused to advance him money he conceived to be essential to provide him with the necessaries of life. The means of obtaining necessaries as well as the means of obtaining money to satisfy his intemperate appetite were furnished by Mrs. Cornett and it seems to us that he devised his property to her as a reward for what he considered to be the only kindly gesture made toward him in the last few years of his life. The evidence that she threatened to foreclose on her mortgage if he did not name her beneficiary in the will is so uncertain as to have no probative value.

It is true that the will was executed and witnessed in the residence of Mrs. Cornett and she provided the paper upon which it was written. The witnesses testified, however, that Mrs. Cornett said nothing to the testator concerning the will, its execution, or what it should contain. Nor did she, so far as the record discloses, know that the will was being drafted. We there-

fore conclude that there is a total absence of evidence in support of the contention that Mrs. Cornett unduly influenced the testator to name her the devisee in the will.

Finally, complaint is made that the court erred in excluding from the jury opinion evidence by lay witnesses that the testator was not ''mentally sound.'' One may be mentally unsound and still have sufficient mind to pass the test of testamentary capacity, which is: sufficient mental capacity on the part of the testator to know the nature and extent of his estate, the natural objects of his bounty, his obligations to them, and to dispose of his estate according to a fixed purpose of his own. Bonta et al. v. Sevier et al., 202 Ky. 334, 259 S. W. 703. While lay witnesses, upon relation of the facts from which they draw their conclusions, will be permitted to give an opinion concerning the testator's capacity in those respects, Wood v. Corcoran, 192 Ky. 774, 234 S. W. 440, such witnesses may not testify to the conclusion that the testator was not mentally sound for all purposes, even though the facts upon which they base their conclusions are given by them in evidence. Crosthwaite v. Crosthwaite, 151 Ky. 364, 151 S. W. 945.

In 28 R. C. L., page 97, section 47, it is said:

''Every sane person is considered as having testamentary capacity, but testamentary capacity and sanity are not equivalent terms, and there may be testamentary incapacity without actual insanity or unsoundness of mind. The law recognizes degrees of mental unsoundness, and not every degree of mental unsoundness or mental weakness is sufficient to destroy testamentary capacity. A less degree of mental power may suffice for a simple will than is needed for a complicated will. The reason for denying testamentary capacity to persons of unsound mind is their inability to take into account and give due effect to the considerations which ought to be present to the mind of a testator in making his will, and to influence his decision as to the disposal of his property. Hence a degree or form of unsoundness which neither disturbs the exercise of the faculties necessary for such an act nor is capable of influencing the result will not take away the power of making a will. Mental aberrations resulting in the subnormal exercises of the faculties which do not result

in such impairment of the reason, judgment or memory as to render the testator unable to understand the business of making a will and the effect of the disposition to be made of his property will not vitiate the will. But though there is only partial insanity, the will is invalid if it is the direct offspring of such partial insanity."

We are, therefore, of the opinion that the exclusion of such testimony was not prejudicial to appellants' substantial rights.

Wherefore, the judgment is affirmed.