# Richmond

MAY FERGUSON AND AMY F. HENDRICK v. PERRY E.
FERGUSON, ADMINISTRATOR OF THE ESTATE
OF M. CALVIN LAFEW.

April 26, 1948.

Record No. 3318.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley, Staples
and Miller, JJ.

The opinion states the case.

*Woods, Rogers, Muse & Walker* and *Sidney F. Parham, Jr.,* for the appellants.

*Earl A. Fitzpatrick* and *Hazlegrove, Shackelford & Carr,* for the appellees.

SPRATLEY, J., delivered the opinion of the court.

M. Calvin Lafew died January 11, 1946, in Roanoke, Virginia. He had retired from his work as a carpenter in 1945. By his industry and thrift, he had accumulated real and personal property of the value of about $8,800. His wife and only child had been dead for several years. His nearest blood relatives and heirs-at-law were Henry L. Wade, James E. Wade, May Dallas Wade, Virginia Wade and Julius Wade, the last three infants, children of his deceased half-brother, Henry Wade. These relatives lived in Franklin county, Virginia.

On January 15, 1946, a paper writing purporting to be the will of Lafew was offered for probate in an *ex parte* proceeding in the Court of Law and Chancery of the city of Roanoke, Virginia. C. E. Trout, nominated as executor therein, made the motion. Probate was refused. Thereafter Perry E. Ferguson qualified as the administrator of the estate of Lafew.

The paper writing named Perry E. Ferguson, his wife, Mary Ferguson, and Mrs. Amy Hendrick as beneficiaries of Lafew's entire estate, with the exception of his household furniture. The furniture was bequeathed to C. E. Trout, who was nominated as *administrator* by the will. Perry E. Ferguson was a nephew of the testator's deceased wife and Mrs. Hendrick was the sister of the late Mrs. Lafew. The real property, constituting the major portion of testator's estate, was devised to Perry E. Ferguson. The personal property was bequeathed to "be divided between my two nieces, Mrs. May Ferguson and Mrs. Amy Hendrick, as may be agreed upon between them and the administrator, based on the time and expense each of these spent in so kindly ministering to me in my illness."

The paper writing, after disposing of the property of the testator, concluded as follows:

"Witness my mark this the 8th day of January, 1946.

his<br>
M. Calvin  X  Lafew<br>
Mark

"I, C. E. Trout, a Notary Public in and for the City of

Roanoke, Va. do certify that M. Calvin Lafew, being unable to write his name on account of nervousness, has made his mark to the foregoing writing, as shown above, this 8th day of January, 1946.

C. E. Trout
Notary Public

My Coms. Expires April 26, 1949

"We as witnesses have this day signed our names in the presence of M. Calvin Lafew, and in the presence of each other.

Elisha J. Jacobs
Nancy C. Ferguson"

On March 29, 1946, May Ferguson and Amy F. Hendrick instituted this proceeding under the provisions of Virginia Code, 1942, (Michie), section 5259, praying that the order in the *ex parte* proceedings, to which they were not parties, be set aside, and that the paper writing be admitted to probate as the true last will and testament of M. Calvin Lafew. Perry E. Ferguson, administrator, C. E. Trout, individually and as executor, the heirs-at-law of Lafew and Mrs. Mary Underwood were made defendants.

The defendants answered and attacked the validity of the will upon three grounds: First, that it was not executed in conformity with Virginia Code, 1942, (Michie), section 5229*; Second, that at the time of its execution, Lafew did not have testamentary capacity; and Third, that its execution was procured by fraud and undue influence.

Upon the trial of the issue of *devisavit vel non*, Perry E. Ferguson, May Ferguson, Amy F. Hendrick and C. E. Trout were declared the proponents of the will and the heirs-at-law of Lafew the contestants. Perry Ferguson,

---

*"No will shall be valid unless it be in writing and signed by the testator, or by some other person in his presence and by his direction, in such manner as to make it manifest that the name is intended as a signature and moreover, unless it be wholly in the handwriting of the testator, the signature shall be made or the will acknowledged by him in the presence of at least two competent witnesses, present at the same time; and such witnesses shall subscribe the will in the presence of the testator, but no form of attestation shall be necessary."

as administrator, was relieved of the duty of contesting the probate.

At the conclusion of proponents' evidence, contestants moved to strike on the ground that due execution had not been shown, in that the signature of the testator had not been made or the will acknowledged by him in the presence of at least two competent witnesses, present at the same time. The trial judge ruled that Trout did not sign the will as an attesting witness; and that since it appeared Jacobs was not in the presence of Lafew at the time the latter's mark was made to the will, there remained the question whether there was a sufficient acknowledgment of the will by Lafew before Jacobs, and that was a question for the jury. To both rulings due objection was made.

The court fully instructed the jury on the issues of testamentary capacity, fraud and undue influence. It refused to give the two following instructions requested by the proponents:

Instruction No. 1. "The Court instructs the jury that if they believe from the evidence that M. Calvin Lafew made his mark on his will in the presence of C. E. Trout and Nancy Ferguson and that C. E. Trout, in the presence of M. Calvin Lafew and Nancy Ferguson signed the will for the purpose of attesting to the fact that the mark was the mark of M. Calvin Lafew, then C. E. Trout was an attesting witness, even though his name was signed to such will at a different place than was signed the name of Nancy Ferguson and E. J. Jacobs, and even though he signed his name at the conclusion of a written statement different from the statement appearing before the names of E. J. Jacobs and Nancy Ferguson."

Instruction No. 2. "The Court instructs the jury that if they believe from the evidence that this purported will of M. Calvin Lafew was signed by him in the presence of C. E. Trout and Nancy Ferguson, whose names are signed to his will, and that they in turn signed their names to his will in his presence, and in the presence of each

other, then the requirements of law as to the due execution of this will have been met."

In accordance with its holding, the court gave instruction number 6, as follows:

"The Court instructs the jury that the paper writing here offered as the last will and testament of M. Calvin Lafew was not signed by him, or by another at his direction, in the presence of two competent witnesses, as required by law, and that in order for it to have been validly executed, it must have been acknowledged by him in the presence of Nancy Ferguson and Elisha Jacobs.

"The Court instructs you that silence or passive acquiescence by Lafew may constitute an acknowledgment as required by law, and if you believe that when Trout called Jacobs into the room and stated to him in substance—'This is Mr. Lafew's mark—I want you to sign on the first line'—that Lafew heard this statement and possessed sufficient mental capacity to understand its meaning, and to further understand the nature of the business being transacted, and was further mentally and physically capable of protesting, and did not protest, then his silence or failure to protest constitutes an acknowledgment by him of the instrument, and the burden of proving these facts is upon the proponents."

Upon consideration of the evidence and instructions, the jury returned a verdict finding that the paper writing of January 8, 1946, was the true last will and testament of Lafew. The contestants moved to set aside the verdict as contrary to the law and the evidence.

On March 20, 1947, the court sustained the motion, stating its reasons in a written opinion. In effect, the court held that, under the facts of the case, it erred in granting instruction number 6, in that the evidence showed no participation by Lafew sufficient to constitute an acknowledgment of the paper writing as his will in the presence of Jacobs. A decree was entered in accordance therewith, setting aside the verdict of the jury and denying probate of the will.

On the questions of the testamentary capacity of the testator and fraud, the trial judge, in his written opinion, quite properly said:

"The questions involving the mental capacity of Lafew to make a will and of undue influence upon him have been decided adversely to the contestants by the jury on the question *devisavit vel non.* On these issues the evidence was conflicting and, therefore, the verdict of the jury is conclusive and binding on the court."

The evidence amply supports the finding of the jury.

The remaining issue related solely to questions of the due execution of the paper writing before two competent witnesses. The first question was whether Trout was an attesting witness to the will. This involves the correctness of instructions 1 and 2, and the first paragraph of instruction 6. The second question was whether Lafew acknowledged the will in the presence of two attesting witnesses.

The material evidence may be summarized as follows:

Late in 1945, due to failing health, Lafew entered Jefferson Hospital in Roanoke, Virginia, for treatment. In December of that year, his condition had somewhat improved and he desired to return to his home in the city of Roanoke. He requested his deceased wife's nephew, Perry Ferguson and the latter's wife, Mary Ferguson, who lived in Carroll county, to come to live with him and take care of him. This they did upon Lafew's return to his home. Perry Ferguson had formerly lived with Lafew, both in Franklin county and the city of Roanoke. He had been regarded by Lafew with affection and esteem for over twenty years, and had been treated as a son. Mrs. Amy F. Hendrick lived near Lafew's home and assisted in nursing him while he was in the hospital and afterwards in his home until his death.

In the first week of January, 1946, Lafew suffered a relapse and was confined to his bed at his residence. Among friends and neighbors who visited him during his illness were C. E. Trout, an elder of the Brethren Church and a

retired business man. Lafew and Trout had been acquainted for thirty years, and through their mutual interest in church affairs had established a cordial and intimate relationship. Trout held a commission as a notary public.

Lafew, in conversations at the hospital and at his home, told Trout of his desire to make his last will and testament. In these discussions, he expressed his wish to leave his real estate to Perry Ferguson.

About 7:00 p. m., January 7, 1946, Trout visited Lafew for the purpose of arranging what is known in the Brethren Church as an anointing ceremony. Upon this visit, Lafew again expressed his desire to make his will, and requested Trout to draw the will for him. Trout consented. Thereupon, Trout sat down by his bedside and in the presence of Mrs. Amy F. Hendrick, and without prompting from either of his visitors, Lafew told Trout how he wanted to dispose of his property. Trout made written memoranda of Lafew's directions.

On the morning of January 8th, from notes made at the above visit Trout drew up on a typewriter the proposed will of Lafew. Believing that Lafew was too weak physically to write his full signature, Trout prepared the will for execution by mark, and immediately below the place intended for the signature of Lafew by mark, he typed the certificate for execution by himself as a notarial witness to the signature of the testator by mark and to the cause for making the signature by mark.

On the late afternoon of January 8th, Trout took the prepared paper to Lafew's house. The latter was told that it was necessary to have some witnesses to his signature. Lafew asked Trout to select somebody. Trout suggested Miss Nancy Ferguson and Elisha J. Jacobs. Miss Ferguson, a sister of the deceased wife of Lafew, was present in the house where she had been staying since December 23, 1945, assisting in the care of Lafew. Jacobs was a lay minister of the Brethren Church and had been a friend of Lafew of long standing. He lived about a block from Lafew's home, and a messenger was sent for him. While waiting for the

appearance of Jacobs, the paper prepared as his will was read to Lafew and he approved its contents. Jacobs, in response to the summons, came to the house and took a seat on a settee in a narrow hallway just outside of the bedroom of the testator. Trout then wrote the name his "M. Calvin Lafew," at the foot of the paper writing, leaving a space between "Calvin" and "Lafew" for Lafew to mark his mark by inserting an "X." The hall in which Jacobs was seated was separated from the bedroom by wide French doors fully opened. Jacobs, from his position, had a clear view of Lafew and the room occupied by him. Lafew was propped up in bed and could, without changing his position, see Jacobs in the hall.

In full view of Miss Nancy Ferguson, Trout and Mrs. May Ferguson, who were in the room and within a few feet of the bed occupied by Lafew, the paper writing was put on a book and given to Lafew for his signature. Lafew was so physically weak that it was necessary for Mrs. May Ferguson to hold his arm while he touched the pen as Trout assisted him in making a cross mark, intended to be his signature. After the paper was thus signed, it was put on a table beside Lafew, and Jacobs was called into the room from the hall. Trout said to Jacobs, "We are ready to sign the will * * *. This is Mr. Lafew's mark,—I want you to sign on the first line." The paper was then signed by Trout as "C. E. Trout, Notary Public." Under the certificate of Trout, Jacobs and Miss Nancy Ferguson immediately signed as witnesses.

Trout then asked Lafew where he wanted the paper writing kept. Lafew replied, "I want you to keep it." Trout accordingly took possession of the paper. Three days later Lafew died.

In explanation of the use of his official title as a notary public, Trout testified that Lafew "was so nervous he probably could not sign his name and I said, well, we can take care of that alright, because the law provides when

a person can't sign their name that they can make their mark and have witnesses to it, and that is the reason that the will shows that way—that there is a place for his signature and a place for the mark and then written right above the space, I wrote 'his' and underneath 'mark,' and then he made his mark in between these two, and then by reason of him being weak and unable to sign his name, I put the certificate as notary public to the will. I did not know whether it was necessary or not, but I just thought probably being in the condition he was, that was being weak and unable to sign his name, that probably would help to establish his mark and I signed it as a notary public."

Under Code, section 5229, there are two methods by which a will may be duly executed. Unless it is wholly in the handwriting of the testator, "his signature shall be made or the will acknowledged by him in the presence of at least two competent witnesses.". *Barnes* v. *Bess*, 171 Va. 1, 10, 197 S. E. 403.

█ The meaning of "signature" is not restricted to a written name. Where the testator puts his mark to the subscription of his name to his will, in the presence of two or more subscribing witnesses, this is a sufficient signing within the meaning of our statute. *Rosser* v. *Franklin*, 6 Gratt. (47 Va.) 1, 52 Am. Dec. 97; *Clarke* v. *Dunnavant*, 10 Leigh (37 Va.) 13; *Pilcher* v. *Pilcher*, 117 Va. 356, 366, 84 S. E. 667, L. R. A. 1915D, 902.

It is undisputed that Lafew signed the will in the manner described in the joint presence of Trout and Miss Nancy Ferguson, and that Trout and Miss Nancy Ferguson subscribed their names to the will in the presence of the testator and of each other.

We have no statute providing a definition of what constitutes a sufficient acknowledgment of a will, nor have we had occasion to make such a definition. The courts are at variance, especially as to what is sufficient to constitute an implied acknowledgment, and the decisions are dependent upon the factual situations or the language of the statutes involved.

A competent witness is a person who, at the time of making the attestation, was qualified to testify in court to facts which he attests by subscribing his name to the will. Trout was not incompetent because of his position as executor or legatee under the will, nor because he was a notary public. *Salyers* v. *Salyers*, 186 Va. 927, 45 S. E. (2d) 481.

If Trout subscribed his name as a witness to the making of Lafew's mark, the requirement of our statute that the signature of the testator shall be made in the presence of at least two competent witnesses has been met in this case, and it will be unnecessary to decide or discuss the question whether Lafew acknowledged the will before Jacobs or any other witness.

Where, as in Virginia, a formal attestation is unnecessary, any form of signing a will with the intention of acting as a witness is sufficient. Attestation is mental, while subscription is mechanical. Attestation is the act of the senses and subscription is the act of the hand. To attest a signature means to take note mentally that the signature exists as a fact. *Tilton* v. *Daniels*, 79 N. H. 368, 109 A. 145, 8 A. L. R. 1073.

An attesting witness is one who signs his name to an instrument for the purpose of proving and identifying it, or one who signs with the intention of being considered a witness to an act in question. The validity of a will depends not on the attestation clause but on the conformity of the execution to the requirement of the statute. *Pollock* v. *Glassell*, 2 Gratt. (43 Va.) 439, 465.

The purpose of the statute in requiring subscription by competent witnesses in the presence of a testator is to prevent fraud and imposition upon the testator and the substitution of a surreptitious will. Their subscription is to establish and prove the genuineness of testator's signature.

The contestants rely upon the cases of *Peake* v. *Jenkins*, 80 Va. 293, and the Mississippi case of *Burton* v. *Brown*, 25 So. 61. The facts in those two cases readily distinguish

them from the case at bar. In the Virginia case, a purported testamentary paper was signed "Anna L. Jenkins, by Mary F. Holliday." Under the word "Witness" one other person signed. The proponents of the will offered Mary F. Holliday as an attesting witness. It was held that Mary F. Holliday did not sign as a subscribing witness, but only as an agent or amanuensis of the testatrix. The signature "Anna L. Jenkins, by Mary F. Holliday" was held to represent the signature of Anna L. Jenkins and not the signature of Mary F. Holliday for any purpose, and had no other signification or effect. A similar conclusion was reached in *Burton* v. *Brown*, *supra*, where H. M. Mingo subscribed the name of the testator "per H. M. Mingo."

This is not a case where one has signed the testator's name for the testator and added his own name thereto to indicate that the testator's name was signed by him. Trout's signature was no part of the signature of the testator, Lafew.

It has been uniformly held in a number of cases that where an officer, authorized to take acknowledgments or to make certifications, has attached his official certificate to a will that the officer has been regarded as a witness, the certificate being regarded as superfluous. Annotation 8 A. L. R. 1075.

This case has been excellently briefed and ably argued by counsel for each of the parties, and there has been cited no case to the contrary, nor have we been able to find one.

In *Keely* v. *Moore*, 196 U. S. 38, 25 S. Ct. 169, 49 L. Ed. 376, it was held that where a certificate of acknowledgment to the testator's signature was signed by a Vice-Consul of the United States that the certificate had no legal effect, but the signature of the Vice-Consul was that of an attesting witness.

In *Tilton* v. *Daniels*, *supra*, it was held that a justice of the peace certifying upon a will the verity of the signature of the testator thereto becomes a witness to the will.

In *Payne* v. *Payne*, 54 Ark. 415, 16 S. W. 1, a justice of the peace, who affixed his certificate of acknowledgment

to a will at the request of the testator, was held to be an attesting witness.

In *Franks* v. *Chapman*, 64 Tex. 159, a clerk of a court was held to be an attesting witness, even though he attached his official seal and signed in his official capacity.

In *Tyson* v. *Utterback*, 154 Miss. 381, 122 So. 496, 63 A. L. R. 1188, the court held that, as a matter of law, an acknowledgment by a testatrix before a notary public makes the notary an attesting witness to the will. See also, *Gore* v. *Dace*, 157 Miss. 221, 127 So. 901.

In the recent case of *Madden* v. *Cornett*, 290 Ky. 268, 160 S. W. (2d) 607, a deputy clerk subscribed his name as a witness in his official capacity. This was held not to vitiate his signature as a witness.

In *Love* v. *Gibbs*, 273 Ky. 775, 117 S. W. (2d) 987, it was held that the dual intent of a person signing an attestation clause to serve both as a witness and as scrivener for testator would not invalidate the execution of the will.

In accord, see also, *In re Bybee's Estate*, 179 Iowa 1089, 160 N. W. 900; *Merrill* v. *Boal*, 47 R. I. 274, 132 A. 721, 45 A. L. R. 830; and *Van Meter* v. *Van Meter*, 183 Md. 614, 39 A. (2d) 752.

The general principle is well stated in Vol. 1, Schouler on Wills, Executors and Administrators, (Fifth Edition), at page 427:

"The certificate of acknowledgment usual in deeds is altogether superfluous in a will; but it may have the useful effect, provided all other formalities are consistent, of converting the notary or magistrate himself into one of the subscribing witnesses. A clerk of a court who witnesses a will does not affect its validity by attaching his official seal and certificate; at the same time he should have dispensed with it."

To the same effect see 68 C. J., Wills, page 709, section 387.

It is contended that Trout did not sign as an attesting witness, that is, *animo attestandi*, but made his certificate as a notary public to allay any suspicion which might arise

from the fact that Lafew signed by mark instead of subscribing his name.

The argument in support of this contention overlooks the recitals of the certificate. The recitals state positively that Lafew "made his mark to the foregoing writing, as shown above," and thus certify the fact that the signature was genuine. This was the manifest purpose and intent of the subscriber and as such it conformed to the attestation requirement of the statute. The making of testator's mark was essential to due execution, but the further statement that Lafew was "unable to write his name on account of nervousness" was merely explanatory, and by no means material on the question of due execution. It added nothing to and took nothing away from the weight of the attestation of the witness to the mark . It does not follow that because he signed his name with one purpose in view that he did not intend it to serve for attestation as well.

Conceding the general rule to be that a witness must intend to attest the will as a witness, the language of the certificate, the actions and the testimony of Trout all declare that he acted as a witness, no matter how he regarded himself. Had Trout merely signed his name under the circumstances without any recital or description of himself he would have been a witness. It cannot be that doing more than was required,—that is, making a certificate as a notary public,—vitiated his competency as a witness.

We conclude, on the facts of this case, and on reason and authority, that Trout was a competent attesting witness, and that the jury should have been so instructed. Our reversal of the court's ruling that Trout was not an attesting witness results in a final decision affirming the due execution of the will in the presence of two competent subscribing witnesses.

For the reasons stated, the order of the trial court is reversed, the verdict of the jury reinstated, and a final order will be here entered directing the probate of the paper writing of January 8, 1946, as the true last will and testament of the testator.

*Reversed and final decree.*