## ASHER v. SIZEMORE.

Court of Appeals of Kentucky.

Oct. 20, 1953.

J. B. Johnson, Harlan, for appellant.

A. E. Cornett, Hyden, for appellee.

STANLEY, Commissioner.

Jimmie Sizemore received 1,830 votes, John Asher, Jr., 948, and three other candidates fewer but a substantial number of votes in the late August primary for the Republican nomination for county clerk of Leslie County. Asher contested the nomination of Sizemore on the ground of violation of the Corrupt Practices Act. The trial court rendered judgment for the contestee and the contestant, Asher, has appealed.

KRS 123.060, in describing the character and requirement of statements of contributions and expenditures to be filed by a candidate prior and subsequent to the nomination date, provides that the statements shall be subscribed and sworn to by the candidate, the form of the oath being given. The contestee, Sizemore, is the present county court clerk of Leslie County. He swore to his statements before a deputy county court clerk, the jurat in each instance being signed, "Jimmie Sizemore, Clerk, by Melda Faye Sizemore, D. C." The contestant argues that this is no valid oath for it is the equivalent of Sizemore swearing himself to his statements since a deputy is the principal's agent and his official acts are done in the name of the principal, the authority given by law being given to the incumbent of the office and not to his deputy. Talbott's Devisees v. Hooser, 12 Bush 408, 75 Ky. 408; Beuley v. Curtis, 92 Ky. 505, 18 S.W. 357, 13 Ky.Law Rep. 703; 67 C.J.S., Officers, § 152. We may agree that an oath in order to be effective must be administered by some officer authorized by law to administer oaths and that one cannot administer an oath to himself. 67 C.J.S., Oaths and Affirmations, § 4; 39 Am.Jur., Oath and Affirmation, Sec. 11.

KRS 28.040 authorizes a county clerk to administer an oath "touching any matter in which an oath may be legally administered." Until recently there was no express statutory authority for a deputy county clerk to administer an oath, at least in his own name. The contestee cites as such authority Section 678 of the Civil Code of Practice, which permitted any act by a ministerial officer to be performed by his deputy. This could scarcely have been deemed authority in a case of this kind, for the provisions of the Code were confined to the execution of such instruments as were required to be executed under the Code. Love v. Gibbs, 273 Ky. 775, 117 S.W.2d 987. So, if the statements had been executed before July 1, 1953, there would have been technical merit in the contestant's argument if there were laid aside the undoubted fact that the parties—the affiant and the officer—believed binding and legal oaths were being administered and if we were to over-look the accomplishment of the purpose and recognition of the significance of an oath. The purpose, it has been said, is to bind the conscience and secure the truth of the statement under the influence of the sanctity of a religious obligation or calling upon God to witness what is avowed to be the truth. 39 Am.Jur., Oaths, Secs. 2 and 6; see Commonwealth v. Jarboe, 89 Ky. 143, 12 S.W. 138, 11 Ky.Law Rep. 344. However, the question is saved by the amendment of what was formerly Section 678 of the Civil Code of Practice, and the incorporation of its terms in the statutes. This made the provisions of general application. KRS 61.035 (which became effective July 1, 1953) reads:

"Any duty enjoined by law or by the Rules of Civil Procedure upon a ministerial officer, and any act permitted to be done by him, may be performed by his lawful deputy."

Here, then, is specific authority for a deputy clerk to administer an oath. The fact is immaterial that in this instance the deputy signed her principal's name and certified the oaths to have been administered by him through the deputy, who signed the jurat. The oaths were in fact administered by the deputy, who under the law on both occasions was authorized to administer them. The contention of the appellant, therefore, cannot be sustained.

The trial judge heard the evidence in person. Several witnesses testified that Sizemore had paid each of them $10 to vote for him. Sizemore not only positively denied the testimony but proved circumstances which strongly supported his denials. Evidence of bad reputations of the confessed vote-sellers is added to their own debasement. Illustrative of these witnesses are a woman and her son (who was not a registered voter) both of whom had been recently confined in jail and were found by one apparently much interested in the success of the contest, who testified that Sizemore had gone to their home about three weeks before the election and given each of them $10 to vote for him. We are impressed with Sizemore's argument that being an experienced politician and having been twice

elected to his office he would never have been so naive and gullible.

The contestee admitted he paid several persons $10 or $15 to work for him at the election, all of which payments appear to have been within legal and permissible bounds, and all were reported in his statements of disbursements.

The special judge, the Honorable W. E. Faulkner of Hazard, filed an opinion in which he duly considered many cases decided by this court and analyzed all the testimony which tended to show a violation of the Corrupt Practices Act by the contestee. We quote the concluding part of the opinion:

"The court heard all the fifty or more witnesses testify and is acquainted with the two pioneer families represented by the parties to this case, and most of the families represented by witnesses, and some of the individual witnesses. He has read the entire transcript of evidence and studied the able briefs of counsel, and is of the opinion that the contestant has not sustained the burden of proof. In every case of this class, suspicious situations and acts are shown, but an election may not be set aside on suspicion, surmise and inference. The evidence of the witnesses who testified that they were paid money by the contestee is not convincing. This is especially true when their reputation and the circumstances under which they claim to have received money are considered, as well as the conduct of contestant's over-zealous friends who apparently worked up the evidence for him, and the firm denial of contestee. There is no evidence that the persons to whom money was given for expenses, as election workers, were thereby influenced in their voting or that they used any of the money to influence other voters."

Our own examination of the evidence convinces us the trial court properly decided the case.

The judgment is affirmed.