# Richmond.

## Peake v. Jenkins.

### March 12th, 1885.

1. Wills—*Attestation.*—Code 1873, chapter 118, section 4, requires the attestation of two subscribing witnesses, but no particular form, or place on the paper, yet the witnesses, unless the will be olograph, must subscribe *as witnesses*, though the word "witness" need not appear.

2. Idem—*Case at bar.*—Instrument propounded as the will of J. is wholly written by H. and signed "J. by H." and is attested "Witness: L." L. being dead, the instrument is probated on the testimony of H. as a subscribing witness.

Held:
 1. The instrument was not attested pursuant to the statute.

 2. H. did not subscribe "as a witness," and could not attest the will.

3. Idem—*Testamentary—Case at bar.*—Instrument dated 13th April, 1870, speaks of "the testatrix" in the third person, and merely recites that she had spoken to the amanuensis "of her wish to make a will to secure to her son J. $200 a year for every year he had been staying at home with her since his father's death," and that on 3rd of January, 1870, she had asked the amanuensis "to write her will for her to copy," &c.

Held:
 The instrument is not testamentary in its character.

4. Idem—*Cases compared.—Pollock* v. *Glassell*, 2 Gratt., 440, is distinguished from case at bar in that, though there the name of the witness was put to the paper, not as a witness, but for some other purpose, yet the testatrix requested the witness to alter the paper, and the witness adopted her signature already there; whilst here, the witness signed as emanuensis, and was not requested to attest the paper.

Error by Louisa J. Peake and others, from the judgment of circuit court of Louisa county, rendered March 22nd, 1884, whereby an instrument of writing, dated April 13th, 1870, propounded by John B. Jenkins, was admitted to probate as the last will and testament of Anna L. Jenkins, deceased.

Opinion states the facts.

*J. G. & W. W. Field* and *J. L. Powell*, for the appellants.

*Pettit & Leake*, for the appellee.

FAUNTLEROY, J., delivered the opinion of the court.

The paper-writing in controversy here, is in the words and figures, to wit:

"My mother has several times spoken to me of her wishes in relation to my brother John. She says father, in his life-time, said he wanted John to have two hundred dollars a year for staying at home to nurse and take care of them in their old age, but she told me she had never had it in her power to pay him anything, and it is her [will] wish that he shall be paid two hundred dollars per year for every year he has been staying at home with her before and since father's death. She has frequently spoken of it to me, and said she wished to make a will to secure John what she considered his just dues, but being so out of the habit of writing, she has deferred it from time to time, and several times asked me to do it for her. I was willing to do so, but told her I supposed her wishes expressed through me would be all that was necessary, as all her children knew how it was, and, I supposed, would respect her wishes in the matter. The third of January, 1870, she asked me again to write her will for her to copy, saying she had now arrived at an age when she might expect to die suddenly, and she wished her children and her heirs to do justice to John, as

he had nursed both father and herself for so many years of his life.

"ANNA L. JENKINS,
"*April* 13*th*, 1870.     "By MARY F. HOLLADAY.
‘   Witness,
LUCY P. B. LIPSCOMB."

No portion of this paper was written by Anna L. Jenkins; nor was it signed by her. The signature was written by Mary F. Holladay, who also wrote the paper, and affixed her own name to the signature, as the *amanuensis* of Anna L. Jenkins. There is but one attesting witness, the name of Lucy P. B. Lipscomb, on the left hand side of the paper, under the word "*witness*," in the singular number. The original paper itself has been brought up, and is submitted as part of the record. An inspection of it, with the naked eye, reveals very much to discredit it as a genuine paper; and to make doubtful the testimony of the two only witnesses introduced by the propounder of the paper asserted as the will of Anna L. Jenkins.

The word *will* is interlined in the body of the paper, and both it and the word *witness*, over the signature of Lucy P. B. Lipscomb, are in handwriting diverse from each other, and different from the handwriting of the instrument itself, by Mary F. Holladay, and that of Lucy P. B. Lipscomb; while all these appear to have been written in different *ink*, and with different *pens*. These indicia suggest, irresistibly, that at least four different persons, at different times, have impressed that paper: Mary F. Holladay to write it and sign Anna L. Jenkins' name; Lucy P. B. Lipscomb to sign it as a subscribing witness; some person unknown to the record to write the word "*witness*" over Lucy P. B. Lipscomb's name; and some one, unknown, to interpolate the word *will:* whereas Mrs. Mary F. Holladay says, in her evidence to probate the paper, that there was no one present at the writing, signing and witnessing of the paper, except Lucy P. B. Lipscomb, herself, and Anna L.

Jenkins; and that there was but one inkstand in the room, and that Mrs. Lipscomb used the same pen and the same ink that she did.

The propounder of the paper, John B. Jenkins, testifies, that *he* did not write the word *witness* over Lucy P. B. Lipscomb's name; and that he does not know who did. While the word *will* interpolated in the body of the paper, is wholly unexplained by any evidence in the record. But irrespective of these pregnant signs of suspicion and doubt of the genuineness of the paper, it is not executed in the mode prescribed and required by the statute in relation to the execution and attestation of wills and testaments. (Code 1873, chapter 118, sec. 4, p. 910.) It was written by Mary F. Holladay, and Anna L. Jenkins is signed to it by Mary F. Holladay, which so signing is indicative only of the personality or individuality of Anna L. Jenkins as the sponsor, maker or signer of the paper. This is the special purport, legal function, and one single significance of the addendum to the name of Anna L. Jenkins in the words, "By Mary F. Holladay."

The statute requires the attestation of two subscribing witnesses; and while no form or particular place on the paper is required, yet the witnesses to attest a will, not wholly written and signed by the testator, must sign the paper *as witnesses;* tho' the word, or description, "*witness*" need not surmount, or annex to, the names of the witnesses, nor is required to appear on the face of the paper itself.

Mrs. Lucy P. B. Lipscomb, the only attesting witness on the face of the paper propounded, is dead; yet Mary F. Holladay, who could never be known, from the face of the paper, as a witness to its execution and publication as the will of Anna L. Jenkins, was admitted by the circuit court to prove, by her own oral evidence, that she was (what the paper does not state or show) an attesting witness to the will, and was then allowed to prove its due execution. This, we think, was erroneous, and is in contravention of the special formalities prescribed by the

statute, whose policy is to strengthen, and not to weaken, the barriers against fraud, by requiring strict legal proof of two credible, competent, chosen witnesses, whose names are signed to the will, at the time and in the process of its execution and publication, *as witnesses.*

An attestation to a writing may be either general or special, and if its special pertinency and office, or function, be manifest, and clearly expressed in plain, unambiguous terms, oral evidence is not admissible to give any other or additional office to the name of the attesting witness. Thus, the signature, to the paper propounded, of "Anna L. Jenkins, by Mary F. Holladay," is a *special* attestation by Mary F. Holladay to the *one fact* of her signing Mrs. Anna L. Jenkins' name for her, in obedience to the requirement of the statute, that "No will shall be valid unless it be in writing, and signed by the testator, or by some other person in his presence, and by his direction, in such manner as to make it manifest that the name is intended as a signature." It represents Anna L. Jenkins, and does not represent Mary F. Holladay for another purpose, and in the dual office of an attesting witness to the execution, acknowledgment and publication of the written instrument as and for the will of the maker—"Anna L. Jenkins, by Mary F. Holladay."

To declare this paper a *will,* duly attested, would be a dangerous precedent; and, though the courts have settled the practice of great liberality and indulgence in construing and *operating the intent* of testamentary papers, without strict requirements of form and technicality; yet, the express statute itself, and public policy, require strict legal proofs of prescribed formalities, as to the *factum* of a paper wholly written and signed, withal, by another than the ostensible maker, which, without the formalities prescribed by the statute, may be tortured and foisted into a will.

The case of *Pollock and wife* v. *Glassell,* 2 Gratt. 440, is cited and relied on, by counsel for appellee, as being in essential particulars, almost identical with this, and as ruling this case.

The case of *Pollock and wife* v. *Glassell*, differs from the case at
bar in the great and essential fact that, in that case, the testa-
trix, Mrs. Glassell, signed the writing (which was a codicil to
her regularly made will, duly executed and attested as such,
and disposing elaborately, and minutely and variously of large
property, real, personal and mixed), with her own hand.  Judge
Baldwin, in delivering the opinion of the court, said, on page
463: "In the *usual place for the names of subscribing witnesses*,
we find those of two persons, one below the other; the first put
thus, "Written by S. S. Ashton;" the second thus, "Witness,
Ann R. Ashton." * * * "The testatrix requested Ann R.
Ashton to witness the paper, which she accordingly did; and
then also requested S. S. Ashton to do so, but she thought and
told the deceased, that it was not necessary for her to sign it
again, as her name was already there, in the manner above
stated."  And, on page 465, he argues the sufficiency of the
attestation by these witnesses, as required by the statute, "by
a fair presumption arising from the *local position of their signa-
tures upon the paper*."

The testatrix, Mrs. Glassell, having signed with her own
hand, this codicil to her will, adapting its dispositions to the
altered conditions, which had supervened since its long pre-
vious date and execution, called upon S. S. Ashton to subscribe
the writing as one of the two required witnesses; and S. S.
Ashton, first erasing by a mark of her pen, the word "for," as
a prefix to Mrs. Glassell's signature, specially to attest the fact
that she had signed the writing for Mrs. Glassell, adopted her
signature, already on the paper in the accustomed place for at-
testing witnesses and over that of the other attesting witness;
and thereby avowed herself to be, and was expressly accepted
by the testatrix, as a general attestant to the will as a duly exe-
cuted testamentary paper.

Not so, in the case at bar; Mrs. Anna L. Jenkins never
wrote the paper and never signed it, except vicariously "*by
Mary F. Holladay*," whose name is only thus impressed on the

paper, specially to attest that she had signed Anna L. Jenkins' name, and for no other or different signification or effect.

The paper legally and logically declares on its face, that Lucy P. B. Lipscomb is the only witness who subscribed it as a witness to it as Anna L. Jenkins' will: and any other person than Mary F. Holladay might just as properly and admissibly have been allowed by the court of probate to be introduced to attest the paper propounded as the will of Anna L. Jenkins, as Mary F. Holladay.

But suppose the paper to be genuine, it is of more than doubtful import as a testamentary instrument; and Mary F. Holladay—who we think was improperly admitted to attest it . as the will of Anna L. Jenkins—said upon the stand in the probate court, in answer to the question, "Whether Mrs. Jenkins meant that paper for her last will, or as a memorandum from which her will was to be written?" that, *she did not know. She never heard her say anything about it.* And in 1871, she filed a sworn answer in the suit of *Peake, &c.* v. *Jenkins,* in which she alleged that Anna L. Jenkins died *without a will*—"that there was no will." She says after writing and giving the will to her mother, she never saw or thought of the will again until a month or two before she gave her deposition in a suit, ten or twelve years after Anna L. Jenkins' death, against her estate for services, by this very John B. Jenkins, the propounder of this paper-writing as the will of Anna L. Jenkins; he having, like Mary F. Holladay, sworn in the same suit, that Anna L. Jenkins *had died intestate.* Anna L. Jenkins died 24th December, 1870. The paper-writing propounded as her last will bears date the 13th of April, 1870; and Mary F. Holladay swears that she wrote and signed it for Anna L. Jenkins on that day.

The paper-writing has no testamentary feature on its face; it appears to be (even it were relieved from the suspicious circumstances of its fabrication, custody and production), more than

anything else, an acknowledgment in writing of a pecuniary obligation for alleged services, which, if it had been delivered, would have been irrevocable, and enforceable *inter vivos.* Mary F. Holladay speaks throughout the paper, from beginning to end; and it does not speak in the *present tense;* but is only recitative of Anna L. Jenkins' repeated former conversations with Mary F. Holladay, expressive of her solicitude about making "a will to secure John what she considered his just dues:"— the last time being January 3rd, 1870. It appoints no executor; it names nor refers to no other person, property, or thing; not one of her numerous other children and grandchildren; and makes no disposition of any single item or portion of her real and personal property. It is not endorsed as her will; and it is found, as John B. Jenkins, the would-be beneficiary of it, swears, by him, four years after his mother's death, in a bureau drawer, where his mother kept her caps. John B. Jenkins lived with his mother up to her death; and on the day of her death, in her own house, where she lay unburied, this John B. Jenkins bitterly bewailed, to Dr. Dillard, "that he had requested Mr. Baily, a lawyer, to write a will for the said Anna L. Jenkins, and he had neglected to do so. And the said John B. Jenkins seemed to be greatly disappointed." After his mother's death he lived, and continues to live, with Mary F. Holladay. He sued his mother's estate for alleged services; and, in that suit, both he and Mary F. Holladay, swore that Anna L. Jenkins had died without having made a will, *and filed this paper-writing* in that suit. In February, 1883,—thirteen years after his mother's death—he propounded this paper-writing as and for his mother's will, and proves its execution, as such, by Mary F. Holladay: the only subscribing witness on the face of the paper, Lucy P. B. Libscomb, being dead, and unable to answer any questions.

Now, looking at that paper-writing, breathing as it does the most intensely wrought-up solicitude of Anna L. Jenkins to

secure "to John his just dues," which Mary F. Holladay swears she wrote and signed for Anna L. Jenkins, at her oft-repeated and most earnest request, and the writing of which satisfied and made easy the motherly solicitude of Anna L. Jenkins, then eighty-seven years old, can the *weakest* or the *strongest* credulity believe, that upon the death of this aged mother, only a few months later, Mary F. Holladay could have utterly forgotten this paper and its purpose, and should have never mentioned its execution to John B. Jenkins, or thought of it, until ten years and more, when Mary F. Holladay saw it only a few months before she gave her deposition in aid of John's suit against his mother's estate for the alleged services, which this pretended paper recognizes and provides for as the will of Anna L. Jenkins?

John B. Jenkins swears that he never heard of the existence or execution of the paper until he found it in the bureau-drawer, where his mother kept her caps, three or four years after her death; that he left it where it was, and, in 1883, he produces it—such as it is—mutilated and interpolated—bearing the impress of the handwriting of at least four persons, and indicating the use of different inks and pens and times. The story of this paper, as given in the evidence of Mary F. Holladay and John B. Jenkins to probate it as the will of Anna L. Jenkins, staggers intelligent belief, and is incompatible with human experience.

We are of opinion that the circuit court of Louisa county erred in holding in its order of March 22d, 1884, that the paper-writing, dated April 13th, 1870, which is produced and propounded by John B. Jenkins for probate in said court, as the last will and testament of Anna L. Jenkins, is testamentary in its character, and was duly executed by Anna L. Jenkins, deceased, as and for her last will and testament; and in deciding, adjudging and ordering the said paper-writing to be admitted to record as her true last will and testament; and the said order

and judgment of the said circuit court must be reversed and annulled.

LEWIS, P., and RICHARDSON, J., concurred in the opinion.

LACY and HINTON, Js., concurred in the results.

JUDGMENT REVERSED.