# Patricia T. Robinson

## v.

# Katherine D. Ward, et al.

Record No. 881350

January 12, 1990

Present: Carrico, C.J., Compton, Stephenson, Russell, Whiting and Lacy, JJ., and Harrison, Retired Justice

*Jay T. Swett (Helen M. Snyder; McGuire, Woods, Battle & Boothe*, on briefs), for appellant.

*Phillip D. Payne, IV (John P. Grove; Richard F. McPherson; Kay Heidbreder; Woods, Rogers & Hazlegrove; Nelson, McPherson, Summers & Santos;* on brief), for appellees Katherine D. Ward, Katherine D. Ward, Administratrix, Virginia Polytechnical Institute and State University, and Boys' Home, Inc.

JUSTICE COMPTON delivered the opinion of the Court.

In this attack on the validity of a will, we determine whether the trial court erred in ruling there was compliance with the statutory mandate of Code § 64.1-49 requiring a witness to "subscribe the will."

The statute provides, as pertinent, that a testator's signature to a non-holographic will "shall be made or the will acknowledged by him in the presence of at least two competent witnesses, present at the same time; and such witnesses shall subscribe the will in the presence of the testator, but no form of attestation shall be necessary."

This proceeding commenced when one of the heirs of Joane G. Tannehill, deceased, filed an application for appeal as a matter of right, pursuant to Code § 64.1-78, from the probate of the will of the deceased. Subsequently, other heirs of Tannehill appeared as parties to contest the will, including appellant Patricia T. Robinson. The application stated that the "execution and/or attestation of said will did not comply" with the statutory requirements, thus invalidating the will.

Appellees Katherine D. Ward, individually and as administratrix of the decedent's estate; Virginia Polytechnic Institute and State University; and Boys Home, Inc. (collectively, proponents) appeared in opposition to the application. They asserted that the document in question was a valid will and that its probate should be upheld.

Following an ore tenus hearing, at which only the proponents presented evidence, the trial court upheld the validity of the document as the last will and testament of the deceased. We awarded the contestant this appeal from the September 1988 judgment order.

The facts are undisputed. Prior to her death, Tannehill, who was not married, resided in Staunton and on her 75-acre farm

near Deerfield, where she grew and sold Christmas trees. Appellee Ward, a close friend of Tannehill, moved to the farm several days before the events in question to assist her in the operation of the business.

During the morning of May 18, 1986, Tannehill, 52 years of age and apparently in good health, became ill with "a violent headache." Shortly, Tannehill directed Ward to obtain "a legal pad." Tannehill stated: "Write exactly what I say, and do not interrupt me." As Tannehill dictated, Ward wrote by hand with a pencil on a page of the pad.

The writing follows, complete with spelling and other errors:

"To Katherine D. Ward I leave everything I own for her life time. She is to maintain the farm & provide employment for Penny Guin for as long as Penny cares to stay.

"I would hope that Katherine can maintain the farm & herself with the income from the farm & interest on my principal. At her death, the principal that is left is to be used as an endowment as maintaing this farm, which I wish to go to Covington Boys Home. The farm is to used by them as a teaching facility. If they do not wish to use it that way than the entire request is to go to VPI to be used in the same manner."

After Ward "finished writing the will," Tannehill "read it over, signed her name, dated it [May 18, 1986]," and "handed it back" to Ward. She placed the document on a table in Tannehill's bedroom, where the events in question occurred.

After trying unsuccessfully to reach several local physicians, Ward was directed by Tannehill to call a friend, Colonel George A. Knudson, a retired Marine and a member of the local rescue squad. Upon arrival, Knudson took Tannehill's blood pressure, which "was rather high."

Tannehill then told Knudson that she had dictated her will to Ward and asked him to "please read it and witness it — which he did." Present in the room at the time were Tannehill, Ward, and Knudson. The following appears on the lower left portion of the document:

"Witness
George A. Knudson
May 18, 1986"

The will again was placed on the bedside table.

Tannehill took some medication and "a short time after that, she kind of cried out, her body jerked, she lost control, and she was unconscious." She was rushed to a Staunton hospital and, shortly after noon on May 18, was flown to a Charlottesville hospital where she remained in a coma.

Distraught by the grave condition of her friend, Ward "felt" that she needed "legal advice" to determine what she "should do step-wise for Joane or anything." With the aid of her sister, Ward contacted a Maryland attorney on May 19 who "said that he felt that in Virginia there should be two witnesses — two witness signatures on the will." The attorney suggested that Ward sign "on the bottom" and have Ward's "name witnessed."

On May 19, Ward returned to the farm and signed the document in the presence of Gwin, the farm employee. Ward signed below Knudson's signature and Gwin signed on the lower right portion. Both affixed the date "May 18, 1986" under their signatures. When asked why the date of May 18, instead of May 19, was written, Ward testified that she "was extremely upset" and that she "just picked up what was on the will." She stated, "I wasn't even thinking what day of the month or year it was." She said, "there was no evil intent or anything on my part."

The testatrix died later on May 19 without regaining consciousness. The document was probated subsequently by the clerk of the court below as the deceased's last will and testament.

In a letter opinion sustaining the validity of the will, the trial court made the following findings.

"In this case there is no question, but that the writing expressed the testamentary intent of Joane G. Tannehill. That is conceded by all parties. The testatrix was a well educated and very intelligent person. At all times she was a strong willed individual and was in full control of her mental faculties. At age 52, she was enjoying good health, and had no reason to expect to die. Her only problem was anxiety caused by the unexpected death of her fiance ten days before. She clearly had the capacity to make a will, and she expressed her testamentary intentions in the document which she dictated. When she completed her dictation, she took it, reviewed it, and then signed and dated it. She clearly recognized the accuracy of the transcription of her dictation and

accepted it as the authentic expression of her testamentary intentions. This was done in the presence and with the knowledge of Katherine Ward, a person in whom she placed great trust and confidence."

Accordingly, the court ruled that Ward's name appearing in the first sentence of the document "constitutes a sufficient compliance with prerequisites of the Statute of Wills to permit the document to be admitted to probate." The court said: "Even though the name appearing in the first sentence was not made as a signature, it does link the second witness with the writing and its execution, and it does identify her with it." The court concluded: "The words 'Katherine D. Ward' written by her while not a signature when made were sufficient subscription under the unique facts of this case to constitute satisfactory compliance" with the statute in question.

On appeal to this Court, the contestant argues the trial court erred "in holding that the appearance of a witness's name on the first line of a will written by the witness is sufficient subscription to constitute satisfactory compliance" with Code § 64.1-49. The contestant maintains that there is "no compliance with the Will statute where the second witness does not subscribe the will as a witness." The contestant says: "When Katherine Ward wrote her name on the first line of the will at the direction of Joane Tannehill, she neither signed nor subscribed the will. When Katherine Ward placed her name on the first line, she merely wrote her name as a beneficiary of the estate." According to the contestant, "while Virginia law requires no formal attestation clause for a subscribing witness . . . , it does require that one who takes the solemn step of subscribing a will as a witness to the fact that the will has either been signed or acknowledged in her presence must do so with the intention of acting as a witness." We do not agree that the trial court erred.

The purpose of the statute in requiring subscription of a will by competent witnesses in the presence of the testator is to prevent fraud, deception, mistake, and the substitution of a surreptitious document. *Ferguson* v. *Ferguson*, 187 Va. 581, 591, 47 S.E.2d 346, 352 (1948). These requirements, however, "are not intended to restrain or abridge the power of a testator to dispose of his property. They are intended to guard and protect him in the exercise of that power." *French* v. *Beville*, 191 Va. 842, 848, 62

S.E.2d 883, 885 (1951). The safeguards of the statute "are not designed to make the execution of wills a mere trap and pitfall, and their probate a mere game." *Bell* v. *Timmins*, 190 Va. 648, 657, 58 S.E.2d 55, 59 (1950).

Accordingly, and while the statute must be strictly followed, it is vital that the provisions not be construed in a manner which would "increase the difficulty of the transaction to such an extent as to practically destroy" the right of the uninformed lay person to dispose of property by will. *Savage* v. *Bowen*, 103 Va. 540, 546, 49 S.E. 668, 669-70 (1905). The statute should be given "a sound and fair construction" with rigid insistence "upon substantial compliance with its requirements." *Bell*, 190 Va. at 657, 58 S.E.2d at 59-60. *Accord Sturdivant* v. *Birchett*, 51 Va. (10 Gratt.) 67, 89 (1853).

The function of the witnesses' subscription "is to establish and prove the genuineness of testator's signature." *Ferguson*, 187 Va. at 591, 47 S.E.2d at 352. "To attest a signature means to take note mentally that the signature exists as a fact." *Id.*, 47 S.E.2d at 351. Formal attestation is unnecessary and the statute mandates no specific form nor particular place on the document for the witness' signature. *Peake* v. *Jenkins*, 80 Va. 293, 296 (1885). Indeed, there is no statutory guidance for what constitutes a sufficient subscription of a will. *See Ferguson*, 187 Va. at 590, 47 S.E.2d at 351.

We agree with the trial court and hold that, under the facts of this case, there was sufficient subscription by Ward to constitute substantial compliance with the statute in question. Most importantly, there is no hint of fraud disclosed by the evidence. Furthermore, there is no dispute that the testatrix had the capacity to make a will and that the document accurately expresses her testamentary intentions. Nevertheless, the contestant seeks to invalidate the will, principally on the ground that Ward, when she wrote her name in the first line of the document, did not "do so with the intention of acting as a witness."

The case of *Pollock* v. *Glassell*, 43 Va. (2 Gratt.) 439 (1846), is particularly appropriate here. In that case, an ill testatrix expressed her wishes for disposition of her property to one S. S. Ashton, who recorded the information as the testatrix dictated it. At the foot of the paper, Ashton wrote, "Written by S. S. Ashton for," intending to add the testatrix' name if the latter should be unable to authenticate the paper by her own signature. The testa-

trix did, in fact, sign her name to the document and Ashton struck the word "for." At the testatrix' request, another person signed the paper as a witness. When the testatrix asked Ashton to sign as a witness, she responded that it was unnecessary for her to sign the paper again because her name was already on it.

█ Rejecting the argument that the attestation by Ashton was insufficient under the statute (because she intended to act as a scribe when she wrote her name), this Court upheld the validity of the document as a codicil. The Court said that plainly the statutory requirement means "nothing more than that the instrument itself should be attested, in order to identify the witnesses, and designate who are to prove its due execution." *Id.* at 464. The Court stated: "The subscription of their names by the witnesses denotes that they were present at, and prepared to prove, the due execution of the instrument so attested, and nothing more." *Id.* Further, the Court noted that Ashton's "subscription alone was a sufficient attestation, and the memorandum ['Written by S. S. Ashton for'] does not disprove it was so intended. At most, it can only call for explanation, and that given by her testimony is completely satisfactory." *Id.* at 465.

█ The *Ferguson* decision is also instructive. There, a notary public, who had prepared a will at the testator's request, signed the document as "C. E. Trout, Notary Public," after the testator had affixed his mark to the document in the presence of Trout and at least one other witness. In ruling that Trout was an attesting witness to the will, even though he had signed solely in his capacity as a notary public, this Court said: "Where, as in Virginia, a formal attestation is unnecessary, any form of signing a will with the intention of acting as a witness is sufficient." 187 Va. at 591, 47 S.E.2d at 351. But the Court ruled: "Conceding the general rule to be that a witness must intend to attest the will as a witness, the language of the certificate, the actions and the testimony of Trout all declare that he acted as a witness, no matter how he regarded himself." *Id.* at 594, 47 S.E.2d at 353.

Likewise, in *French* v. *Beville, supra*, one Pitts signed his name to a will for the purpose of certifying as a notary public that another witness had observed the testator's execution of the document. The Court held that Pitts signed as a witness to the will, citing *Pollock* and *Ferguson*, and stated that the witness' attestation "may be contradicted or explained." 191 Va. at 850, 62 S.E.2d at 886.

■ As the proponents contend, the general rule "that a witness must intend to attest the will as a witness," is not applied mechanically. The important fact, as noted in *Ferguson*, is not how the witness regarded himself during execution of the will, but what he observed, because the witness' signature serves mainly to identify to whom the testator acknowledged the instrument. In other words, as the proponents argue, the witness need not realize his status during execution of the will.

■ Ashton in *Pollock*, Trout in *Ferguson*, and Pitts in *French* did not intend to attest the respective documents when they wrote their names on the instruments upheld in each case. In those cases, as here, each person was declared to be a witness because the transaction was free of fraud, the document expressed the testamentary intent of a competent testator, the witness had written his or her name, and the will was acknowledged before at least two witnesses present together.

■ Similarly, Ward did not intend to act as a witness when she wrote her name in the first line of the document. Yet, she was a subscribing witness to the execution of the will, within the meaning of the statute. While the testatrix never formally asked Ward to be a witness to the will, the evidence establishes that Tannehill expected her to act as a witness and treated her as one, as the trial court noted. Moreover, Ward's testimony, and the other evidence, establishes that she, in fact, acted as a witness to the preparation and execution of the will and that she was present with Colonel Knudson when the testatrix acknowledged her signature to the document. Under these circumstances, the statute requires no more.

■ A statement from *Sturdivant* is apropos here: "Upon the whole, . . . there has been a reasonable and substantial, if not a literal, compliance with the requirements of the statute shown in this case, sufficient for all practical purposes, and which in favor of the testamentary right ought to be sustained. To reject the will . . . would be . . . to sacrifice substance to form, and the ends of justice to the means by which they are to be accomplished." 51 Va. (10 Gratt.) at 89.

Accordingly, the judgment of the trial court will be

*Affirmed.*

CHIEF JUSTICE CARRICO, with whom JUSTICE STEPHENSON and JUSTICE WHITING join, dissenting.

Code § 64.1-49 provides that a witness to a will "shall subscribe the will in the presence of the testator, but no form of attestation shall be necessary." What the majority does in this case is to dispense not only with form, which the Code section permits, but also with substance, which, I submit, is impermissible.

The substantive element of subscription requires "signing a will *with the intention of acting as a witness.*" *Ferguson* v. *Ferguson,* 187 Va. 581, 591, 45 S.E.2d 346, 351 (1948) (emphasis added). Here, there is absolutely nothing in the record to support the proposition that when Katherine D. Ward placed her name on the first line of the will in question, she did so with the intention of acting as a witness. Indeed, the record is conclusive of the proposition that the only reason Ms. Ward wrote her name in the will was to identify herself as a beneficiary. I would reverse.