## CIRCUIT COURT OF WARREN COUNTY

John Wojcik et al.

v.

Carolyn Sue Burgess et al.

December 5, 1995

Case No. (Chancery) 95-60

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on the Motions for Summary Judgment of Defendants Graves and Coldwell-Banker, Joel Stowe Assoc., upon which issue the parties have filed memoranda of authority, which have been considered by the Court. Upon consideration whereof, the Court has made the following decision to grant the Defendants' Motion for Summary Judgment on all rights of action except for that based on the condition of the well.

### I. *Statement of Material Facts*

It appears from the memoranda and pleadings of the parties that there is no dispute about the following material facts, except where indicated.

Defendant Burgess formerly owned a residence in Warren County, which she listed for sale with Vanguard Properties, a real estate broker in Warren County, Virginia, by whom Defendant Joel Soorenko is employed.

In their marketing of the property, the Defendants represented the residence to be a "three bedroom home," which it is physically but which it is not functionally because of the limitations on occupancy imposed by the Warren County Health Department.

On August 8, 1994, the Plaintiffs entered into a contract to purchase the Burgess residence in Warren County. The contract provided that:

> If the Property is served by an on-site well or sewage disposal system or both, Seller agrees to furnish Purchaser with a certifi-

cate dated not more than 30 days from the date of the Contract from the appropriate government authority, or from an acceptable private company, indicating that the well water is free from contamination by coliform bacteria and that there is no evidence of malfunction of the sewage disposal system. If either system is found to be defective, Seller shall take immediate steps to repair all defects at Seller's expense.

These certificates were not provided to the Plaintiff until after the closing.

The condition of the well on the property was an issue which the contract addressed: "Subject property is currently on a shared well. Seller agrees to make whatever adjustments are necessary to assure [sic] that existing well [now located on subject property] serves only the subject property as of day of settlement."

Defendant, Kay Graves, is an associate broker employed by Coldwell Banker, Joel Stowe Associates. Amended Bill of Complaint, paragraph 4. Kay Graves acted as an agent for the seller, and she is the real estate agent who showed the Plaintiffs the property and procured their contract to purchase.

During the September 21, 1994, walk-through inspection of the property, Defendant Graves gave the Plaintiff a copy of a letter from the Warren County Health Department to Burgess which stated, that the house had a "two person maximum occupancy." Bill of Complaint, paragraph 13. Upon receiving a copy of this Health Department letter, the Plaintiffs expressed concern about the two person occupancy limitation to the Defendant Graves who advised them that it would not be a problem and that the Plaintiffs "would just need to have it pumped out more often." Amended Bill of Complaint paragraph 14. Graves' response may be disputed.

After the Plaintiffs expressed reservations to Kay Graves regarding closing on the property due to the two person occupancy limitation, Defendant Joel Soorenko, an agent of Defendant Vanguard Properties, called the Plaintiffs and told John Wojcik, that there was "nothing to worry about." Soorenko allegedly said that the septic system to the house was capable of 550 gallons per day and that they would just have to pump the tank out more often. Soorenko's response is disputed. Amended Bill of Complaint, paragraph 15.

Paragraph 18 of the Amended Bill of Complaint specifically alleges that:

At the September 23, 1994, closing, the Plaintiffs were also asked to sign a document stating they were aware of the Warren County Health Department's report that the property they were purchasing could only be used for two persons. Upon seeing this document, Plaintiffs again expressed reservation about going forward with the closing, and stated to Kay Graves, Joel Soorenko, and the closing attorney, that the Plaintiffs intended to raise a family and were concerned about the two person occupancy limitation.

In response to this, the settlement attorney, Hubert H. Marlow, Jr., said that, "the Health Department doesn't count heads," and all the Defendants present acquiesced to this statement; Defendant, Joel Soorenko, stated the Plaintiffs were "maybe just being paranoid because the septic system is a new system."

On October 18, 1994, the Plaintiffs were given a certificate from Jimmy Wines Excavating Company, Inc., stating that Mr. Wines had made a walk-over visual inspection of the septic system, and his investigations reported no apparent malfunctions in the septic system as of the walk-over on September 20, 1994. Amended Bill of Complaint, paragraph 16.

On October 18, 1994, the Plaintiffs were provided a water purity test from the American Medical Laboratories, Inc., stating that the water of the residence was negative for coliform bacilli, the water was safe for human consumption, and had been screened for chlorine and found to be negative within acceptable limits. Amended Bill of Complaint, paragraph 17.

After taking occupancy of the residence, the Plaintiffs had discovered various defects in the septic system which they claim were known or should have been known to the Defendant, Carolyn Sue Burgess, and her agents prior to the contract and closing.

Paragraph 24 of the Amended Bill of Complaint alleges that Graves told the Plaintiffs that "the premises had a good working well and septic system."

The Defendants have filed Motions for Summary Judgments based principally upon the disclosure signed by the Plaintiffs at closing which stated:

We, the undersigned buyers, are aware of the Warren County Health Department's report that the property they are purchasing can only be used for two (2) persons, one bedroom usage of the septic system.

Defendants also rely upon the fact the Plaintiffs had the seller escrow $1500.00 at the closing "to be used for pumping two septic tanks, leveling and repair distributor box and repairs to furnace . . . ." Escrow Agreement, Exhibit D to Request for Admissions.

## II. *Conclusions of Law*

In *Bryant v. Peckinpaugh*, 241 Va. 172, 175, 400 S.E.2d 201 (1991), the Supreme Court reviewed the elements of a viable fraud action:

> A litigant who prosecutes a cause of action for actual fraud must prove by clear and convincing evidence: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled.

The case of *Bergmueller v. Minnick*, 238 Va. 332, 337-38, 383 S.E.2d 772 (1989), in which the Supreme Court was confronted with a case where it was represented that a successful perc had been made on the property, when that was untrue, is instructive:

> It follows that the Bergmuellers were entitled to the relief of rescission unless they waived that right by proceeding to settlement. The trial court, relying on *Costello v. Larsen*, 182 Va. 567, 29 S.E.2d 856 (1944), took the view that (1) the Bergmuellers and the Minnicks had equal means of access to the true state of facts, (2) the Bergmuellers might easily have asked to see the results of a percolation test before proceeding to settle, but they carelessly accepted the Minnicks' deficient performance without making further inquiry, and (3) they thereby waived the provision inserted into the contract for their protection.
>
> *Costello* is inapposite. That case was an action in tort to recover damages for deceit. There, we affirmed the trial court's dismissal of the action on demurrer because the facts pleaded related to statements of opinion made in reference to future occurrences, rather than representations of existing fact. Language in *Nationwide* is particularly germane to the present case: "[O]ne cannot, by fraud and deceit, induce another to enter into a contract to his disadvantage, then escape liability by saying that the party to whom the misrepresentation was made was negligent in failing to learn the truth." 229 Va. at 631, 331 S.E.2d at 492.

The case of *McDaniel v. Hodges*, 176 Va. 519, 11 S.E.2d 623 (1940), is also instructive. In that case the plaintiff sued for rescission of a contract for the sale of real estate because of reliance upon false and fraudulent material representations of an agent of defendant; the evidence showed that the agent represented that there was a good well of water right at the house, while as a matter of fact the well was in a worthless condition and this fact was definitely known to the agent prior to the sale to plaintiff. The true condition of the well was not apparent to ordinary observation. The agent also stated that there was a spring on the property that could be used until the well was put in fit condition. No such spring or other source of water whatever was located on the property. These facts were sufficient to support a finding of fraud by the agent.

In this case, the alleged misrepresentations are about the capacity of the septic system, and the condition of the well and the septic system are material representations that the plaintiffs claim that they relied upon, and, if found by the jury to be a material misrepresentation, may be a basis for relief.

"It is well settled in Virginia that one who seeks to hold another in fraud must clearly show that he relied upon the acts and statements of the other, and he must be held not to have so relied when it appears that he made his own investigation, whether complete or not, into the subject matter at hand." *Piedmont Trust Bank v. Aetna*, 210 Va. 396, 400 (1969) (plaintiff could not recover in fraud action against insurance agent, because plaintiff had contacted expert in the field of insurance coverage which showed that he did not rely on agent's representations) citing *Poe v. Voss*, 196 Va. 821, 86 S.E.2d 47 (1955) (purchaser had complete opportunity to inspect furnace in the house which he contracted to purchase, so his fraud action was precluded).

"[I]f a purchaser is given or secures information as to the condition of property such as would excite the suspicions of a reasonably prudent man, he is then under a duty to ascertain the true condition for himself and cannot rely upon the representations of the vendor." *Horner v. Ahern*, 207 Va. 860, 863-64, 153 S.E.2d 216, 219 (1967); cited with approval in *Boris v. Hill*, 237 Va. 160, 163, 375 S.E.2d 716 (1989).

The Supreme Court recently considered the question of fraud and the purchaser's duty to make investigations in *Van Duesen v. Snead*, 247 Va. 324, 328-329 (1994):

Concerning an allegation of actual fraud, we have said that "concealment of a material fact by one who knows that the other

party is acting upon the assumption that the fact does not exist constitutes actionable fraud." *Allen Realty Corp. v. Holbert*, 227 Va. 441, 450, 318 S.E.2d 592, 597 (1984) (citation omitted).

For purposes of an action for fraud, concealment, whether accomplished by word or conduct, may be the equivalent of a false representation, because concealment always involves deliberate nondisclosure designed to prevent another from learning the truth. A contracting party's willful nondisclosure of a material fact that he knows is unknown to the other party may evince an intent to practice actual fraud. [Citations omitted.]

Our decisions in *Spence* and in *Allen Realty Corp.* reaffirm the principle expounded earlier in *Clay v. Butler*, 132 Va. 464, 474, 112 S.E. 697, 700 (1922): "If a party conceals a fact that is material to the transaction, knowing that the other party is acting on the assumption that no such fact exists, the concealment is as much a fraud as if the existence of the fact were expressly denied, or the reverse of it expressly stated . . . ."

As a general rule the burden is on the purchaser of real property to discover defects. "[A] very important exception to that rule is that the seller 'must not say or do anything to throw the purchaser off his guard or to divert him from making the inquiries and examination which a prudent man ought to make'." [Cites omitted.]

In this case an independent investigation was made into the condition of the septic system. Additionally, the Plaintiffs clearly knew of the restrictions on their use of the house before they closed; they signed a statement in writing that: "We, the undersigned buyers are aware of the Warren County Health Department's report that the property they are purchasing can only be used for two (2) persons, one bedroom usage of the septic system." Therefore, as a matter of law, it cannot be said that the Plaintiffs relied upon Graves' statements as to these matters.

The duty of a party to reveal material facts of which he has knowledge depends upon the circumstances of each case and the relationship between the parties. In 37 Am. Jur. 2d, *Fraud and Deceit*, § 146, it is stated:

The principle is basic in the law of fraud, as it relates to nondisclosure, that a charge of fraud is maintainable where a party who knows material facts is under a duty, under the circumstances, to speak and disclose his information, but remains silent. Situations

evoking the duty of disclosure may arise in various ways in different cases. Generally speaking, however, in the conduct of various transactions between persons involving business dealings, commercial negotiations, or other relationships relating to property, contracts, and miscellaneous rights, there are times and occasions when the law imposes upon a party a duty to speak rather than to remain silent in respect of certain facts within his knowledge, and thus to disclose information, in order that the party with whom he is dealing may be placed on an equal footing with him. In such a case a failure to speak amounts to a suppression of a fact which should have been disclosed and is a fraud. In such circumstances, a failure to state a fact is actually equivalent to a fraudulent concealment and amounts to fraud just as much as an affirmative falsehood : . . . .

Among other ways, the obligation to communicate facts may arise from the fact that one of the parties has superior knowledge or means of knowledge; from the fact that confidential relations exist between them; from the fact that a party does something or says something which, for want of the disclosure, is false and deceptive; from the fact that he is placed or places himself in a position where his silence will convey a false impression; or from the fact that a statement or representation has been made in the bona fide belief that it is true, and before it is acted on, the party who has made it discovers that it is untrue.

Also pertinent to this case is 37 Am. Jur. 2d, *Fraud and Deceit*, § 148, where it is stated:

There is abundant authority to the effect that if one party to a contract or transaction has superior knowledge, or knowledge which is not within the fair and reasonable reach of the other party and which he could not discover by the exercise of reasonable diligence, or means of knowledge which are not open to both parties alike, he is under a legal obligation to speak, and his silence constitutes fraud, especially when the other party relies upon him to communicate to him the true state of facts to enable him to judge of the expediency of the bargain or transaction.

Of like effect is Restatement (Second) of Contracts § 161:

A person's non-disclosure of a fact known to him is equivalent to an assertion that the fact does not exist in the following cases only:

(a) where he knows that disclosure of the fact is necessary to prevent some previous assertion from being a misrepresentation or from being fraudulent or material.

(b) where he knows that disclosure of the fact would correct a mistake of the other party as to a basic assumption on which that party is making the contract and if non-disclosure of the fact amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing.

(c) where he knows that disclosure of the fact would correct a mistake of the other party as to the contents or effect of a writing, evidencing or embodying an agreement in whole or in part.

(d) where the other person is entitled to know the fact because of a relation of trust and confidence between them.

In this case, the jury may find that the Plaintiffs reasonably relied upon the Soorenko's representations about the capacity of the septic system and the statements about the "good" condition of the well.

The species of fraud are numberless, and like a chameleon, fraud is always colored by the context from which it arises. For that reason, it is usually for the jury to determine from the facts of a specific case, whether a fraud was committed. "Fraud is seldom, if ever, provable by direct testimony, but usually must be shown by circumstances which are sufficient to convince fair-minded men that they would not have occurred without the existence of a fraudulent purpose and design. Fraud is a mixed question of law and fact but, in most cases, is a jury question." *French v. Beville*, 191 Va. 842, 856, 62 S.E.2d 883 (1951).

"[O]ne cannot, by fraud and deceit, induce another to enter into a contract to his disadvantage, then escape liability by saying that the party to whom the misrepresentation was made was negligent in failing to learn the truth." *Nationwide Ins. Co. v. Patterson*, 229 Va. 627, 631, 331 S.E.2d at 492.

Punitive damages are not recoverable in equity. *See Colonna Dry Dock Co. v. Colonna*, 108 Va. 230, 240-44, 61 S.E. 770, 774-75 (1908); and *United States v. Hart*, 86 F. Supp. 787 (E.D. Va. 1949).

Given the fact that the reports about the septic system and water system were not provided to the Plaintiffs until after closing and that an escrow agreement was entered into about the septic system, it appears that the

parties intended for the contract provisions about the well and septic to survive the closing. If these systems are materially defective as alleged in the amended bill of complaint, this may support rescission based on breach of contract, even if no fraud is proven.

### III. *Decision*

For the foregoing reasons it is adjudged and ordered as follows.

1. The Defendant Graves and Coldwell Banker's Motion for Summary Judgment is sustained with respect to all rights of actions asserted, except for that based on the condition of the well.

2. Plaintiff's prayer for punitive damages is stricken.